Sanford E. Hutchison, Plaintiff-Appellee, v. Board of Education of Greenfield Community Unit School District No. 10, Greene, Macoupin and Morgan Counties, Defendant-Appellant.

Gen. No. 10,357.

Third District.

October 18, 1961.

Jack McDonald, of Carrollton (Hugh A. Strickland, of Carrollton, of counsel), for appellant.

R. W. Deffenbaugh, of Springfield, for appellee.

CARROLL, J.

This is a proceeding brought under the Administrative Review Act to review a decision of the defendant Board of Education, dismissing plaintiff as a teacher in Greenfield Community Unit School District No. 10, Greene, Macoupin and Morgan Counties. The Circuit Court reversed the decision and the board has appealed.

Plaintiff was employed by the defendant Board as an agriculture instructor. On March 25, 1960, the Board served plaintiff with a dismissal notice which reads as follows:

"Notice is hereby given you that at its adjourned meeting held on the 17th day of March, 1960, the Board of Education of Greenfield Community Unit School District No. 10, Greene, Macoupin and Morgan Counties, Illinois, upon motion duly made, seconded and unanimously adopted by the six members present, voted for your dismissal as a teacher in said school at the end of the present school year for the following reasons: (1) failure to effectively perform and carry out your instructional duties; (2) the best interest of the school requires such action.

Dated this 25th day of March, 1960."

Plaintiff requested a public hearing and also served the Board with a demand for a bill of particulars. A public hearing was held but the Board refused to furnish a bill of particulars. The hearing began May 13, 1960, and on May 20, 1960, after hearing numerous witnesses, the Board adopted the following resolution:

"Resolved, that this Board find from the testimony taken and the exhibits introduced at the public hearing held at the request of Sanford Hutchison, that the charges made by this Board against Sanford Hutchison were fully proven; that such charges were not remediable and were sufficient reason for his dismissal; that the motions made to dismiss such charges should be denied; and that the best interest of the school require that the dismissal of Sanford Hutchison be approved.

"Further Resolved, that all motions made by the said Sanford Hutchison to dismiss said charges be and they are hereby denied and that the action of this Board is dismissing the said Sanford Hutchison be and the same is hereby approved.

248

"Further Resolved, that a copy of this Resolution be served upon the said Sanford Hutchison as notice of the decision of this Board."

On review the Circuit Court found the Board's decision to be contrary to law and against the manifest weight of the evidence and ordered the same reversed.

It was stipulated on the hearing that by virtue of his employment plaintiff qualified for contractual continued service under the Teacher Tenure Law, Art 24, Ill Rev Stats 1959, c 122, and was entitled to the benefits afforded him by said law. Among such benefits are those conferred by § 24–3, which insofar as pertinent here, is as follows: ". . . the dismissal . . . shall not become effective until approved by a majority vote of all the members of the Board upon specific charges and after a hearing, if a hearing is requested in writing. . . . Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." It was further stipulated on the hearing that no warning in writing was given plaintiff prior to the service of the notice of charges on May 25, 1960.

We think the first question requiring consideration is whether plaintiff was afforded a hearing upon specific charges in accordance with the provisions of the Tenure Law.

The Board's dismissal resolution would seem to indicate a failure to distinguish between "charges" and "causes". Under the School Code the Board of Education is vested with power to dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and also whenever in its opinion a teacher is not qualified or whenever in its opinion the interests of the school require it. Ill Rev Stats c 122 §§ 7–16 and 6–36. These are the specified causes

249

on account of which charges may be made against a teacher. For the protection of teachers who have qualified for contractual continued service under the Tenure Law, the latter statute provides that where the causes relied upon are remediable, the Board, before serving notice of charges on account of such causes, must give the teacher written warning. In this case the sole cause relied upon was that the best interest of the school required plaintiff's dismissal. Despite the fact that the Board may have regarded such cause as not being remediable, he was entitled to a hearing upon specific charges on account of said cause. Although the dismissal resolution refers to "charges" made by the Board against plaintiff, the only notice thereof served upon him was the statement that he was being discharged for: "Failure to effectively perform and carry out your instructional duties." We think such a vague accusation was wholly insufficient to qualify as a specific charge within the meaning of the Tenure Law. If plaintiff was being dismissed because he refused or neglected to perform certain duties, then he had a right to be informed specifically as to the particular duties alleged to have been breached. Furthermore, if the charges related to a cause which was remediable, then plaintiff should have been given an opportunity to remedy such cause. If plaintiff was not entitled to specific information as to wherein he had failed as a teacher, then the provisions concerning remediable causes would be meaningless. Whatever the specific charges against plaintiff may have been, they were not disclosed in the dismissal notice. The record shows that prior to the hearing, the Board refused to furnish plaintiff with a bill of particulars. As a result, he faced a hearing upon the general charge that he had not done his duty. This was not the type of hearing to which he was entitled under the plain provisions of the Tenure Law.

250

It appears from the record that at the commencement of the hearing plaintiff filed a written motion to dismiss the charges and all proceedings against him. One of several grounds alleged in support of such motion was the failure of the Board to give plaintiff reasonable warning in writing stating specifically the causes which if not remedied would result in his removal. This motion which was denied at the conclusion of the hearing raised a question as to the jurisdiction of the Board to proceed. If in fact the causes relied upon were remediable, then plaintiff was entitled to reasonable written warning and failure to give such warning would deprive the Board of jurisdiction. Keyes v. Board of Education, 20 Ill App2d 504, 156 NE2d 763; Allione v. Board of Education, 29 Ill App2d 261, 173 NE2d 13; Smith v. Board of Education, 19 Ill App2d 224, 153 NE2d 377 (Abst.).

In adopting the dismissal resolution, the Board indicated its prior determination that the causes stated therein were not remediable. That Boards of Education are vested with discretionary power to make such determination in the first instance is not subject to question. However, such discretion may not be exercised arbitrarily and without cause, and on review the Court has the power to determine whether there has been an abuse of such power. Meridith v. Board of Education, 7 Ill App2d 477, 13 NE2d 5; Hauswald v. Board of Education, 20 Ill App2d 49, 155 NE2d 319; Allione v. Board of Education, supra. As the Court aptly said in the Hauswald case, "The Tenure Law would have no value as a protection to teachers if Boards were free to dismiss teachers for 'cause' deemed by them to be irremediable and the decisions were insulated from judicial review." Accordingly, on review it becomes the duty of the Court to determine whether the Board's determination that

the charges were proven and not remediable, finds substantial support in the evidence.

Plaintiff was originally hired by the Board on June 14, 1955, at a salary of $4,532. With the exception of 1958–59, his salary was increased each year in accordance with a teacher welfare wage schedule used by the Board, and in 1959–60 his salary had risen to $5,775. The district maintains a vocational agriculture department. Although not having a farm shop and the necessary equipment to offer instruction in farm mechanics, the department nevertheless during plaintiff's employment, met the requirements of the "Smith-Hughes Program" and received reimbursement from the state for a part of plaintiff's salary. Failure to provide a farm shop was explained by the superintendent as being due to the financial condition of the district. He testified that on 2 occasions the voters had rejected proposals to increase the educational levy rate which would have permitted the maintenance of a farm shop. The enrollment in the agriculture classes declined from 30 in 1955–56 to 14 in the year 1959–60. According to a bulletin issued by the State Board of Vocational Education, additional reimbursement for a part of the salary of the agriculture teacher was made to schools conducting classes for out-of-school youths and adult farmers. Plaintiff testified that he did not conduct an out-of-school young farmers class for the reason that he found no interest in such a program. He testified that he conducted an adult farmers class each year during his employment. However, dwindling enrollment in such classes seems to indicate little interest therein among the farmers of the district. The evidence makes it clear that failure of a district to offer classes for either adult or out-of-school young farmers in no way affects its eligibility for benefits under the Smith-Hughes Program. Apparently plaintiff's difficulty

began with the receipt by the superintendent of the district of a report from the State Board of Agricultural Education, dated April 30, 1959. This report calls attention to the fact that although 46 of the boys enrolled in the defendant district's high school lived on farms only 16 are enrolled in vocational agriculture. The report then suggests that the lack of interest in the school agriculture program could be due to any one of the following: (1) the high school schedule will not permit them to enroll, (2) counseling the boys receive, (3) the students' desire for vocational agriculture, (4) vocational agriculture teacher's ability, (5) the fact that no farm shop is available. The report then offered suggestions improving scheduling of classes and counseling and stressed the importance of a farm shop in an agriculture department. The superintendent discussed the report with the plaintiff and went into the question as to how, under the financial condition of the district, the improvements could be made. The record shows that plaintiff thereafter formulated an outline for the various classes in agriculture which was given to the superintendent, and which apparently was an effort on plaintiff's part to meet the suggestions contained in the report. At a meeting on August 13, 1959, the State Report was read to the Board. On September 3, 1959, plaintiff made a personal report to the Board and told them of the problem which lack of a farm shop created and complained of the counseling given students and conflicts in classes. At a meeting on October 26, 1959, the members of the Board discussed the question of whether the agriculture board should be continued. A motion to continue the department carried by a vote of 4 to 3. At the same meeting the Board voted to ask plaintiff to seek employment elsewhere for the next contract year. At the Board meeting of November 12, 1959, the superintendent re-

253

ported that he had informed plaintiff of the Board's request, but plaintiff had not indicated what his decision would be. At the same meeting the Board voted 6 to 1 to adopt the resolution dismissing plaintiff. The superintendent, who was the Board's chief witness, had never visited any of plaintiff's classes and in his testimony he did not even suggest that plaintiff was lacking in ability or had failed to carry out the duties assigned to him. On cross-examination the superintendent stated that the plaintiff had been co-operative and had never refused to carry out orders given him. The same is true of the testimony of the present principal of the school, John Burch. Henry Page, who was principal during part of plaintiff's employment testified he had visited plaintiff's classes and that in general plaintiff's teaching met with his approval. The other evidence substantiating the Board's charge consisted chiefly of the testimony of 5 witnesses who, over the objection of plaintiff's counsel were permitted in answer to leading and suggestive questions to voice their respective conclusions that plaintiff lacked ability to properly teach his classes. Four students who were members of plaintiff's agriculture classes at the time of the hearing testified in his behalf. Each stated that he learned something in plaintiff's classes and was satisfied with his teaching. Testifying to the same effect were several persons who had attended plaintiff's adult classes. Two agriculture teachers from other districts also testified for plaintiff and stressed the importance of a farm shop in conducting a good vocational agriculture program.

The foregoing would appear to fairly summarize the evidence in the record. As previously pointed out, the failure of the notice to specifically define the charges against plaintiff, and the Board's refusal to furnish a bill of particulars, placed the plaintiff in the position of not knowing what he had done or not

done which impelled the Board's decision that the best interest of the school required his discharge. The reason for the Board's refusal to be specific is apparent from the evidence. No proof of plaintiff's failure to do his duty or of any action or omission detrimental to the best interest of the school was offered. It is thus understandable that the Board would be unable to formulate specific charges.

In general the evidence shows that enrollment in the agriculture department had declined; that this was a source of concern to the Board; that the state inspector had suggested numerous causes which could be contributing to the lack of student interest in the study of agriculture; that the financial condition of the district did not permit maintenance of a farm shop, which is apparently essential in conducting a good agriculture program; that the membership of the Board was sharply divided on the question as to whether the agriculture department should be abandoned and that the Board considered dismissing plaintiff only after he had refused to adopt the Board's suggestion that he seek employment elsewhere. While such proof may tend to show that agriculture was not popular with the students, we think that it falls far short of establishing that plaintiff's presence on the faculty was detrimental to the best interest of the school. Likewise the Board's determination that the causes assigned for dismissal were not remediable appears to be without substantial foundation in the record.

From our examination of the record, we are convinced that the trial court was right in holding that the Board's decision was against the manifest weight of the evidence.

Affirmed.

ROETH, P. J. and REYNOLDS, J., concur.