**Henry W. Miller, Jr., Plaintiff-Appellee, v. Board of Education of School District Number 132, Cook County, Illinois, Defendant-Appellant.**

**Gen. No. 49,280.**

First District, Fourth Division.

July 29, 1964.

---

Klein and Thorpe, of Chicago (Franklin W. Klein and Newell N. Jenkins, of counsel), for appellant.

Block and Solomon, of Chicago (Irving L. Block, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from the judgment of the Circuit Court of Cook County after a hearing reversing the decision of the Board of Education of School District No. 132, Cook County, Illinois, discharging Henry W. Miller, Jr. as a teacher in the said school district.

It appears from the record that at the time of the hearing before the School Board in 1960 the plaintiff was thirty years of age. He was born in Chicago where he attended elementary and high schools. He then attended the University of Illinois where he received the degrees of Bachelor of Science and Master of Science in Health Education. From 1952 to 1954 he was a member of the U. S. Naval Intelligence. He served as an instructor at the University of Illinois from 1955 to 1958. He had worked as a member of the Aquatic Staff in the Chicago Boy Scout Camps and was a playground director in Evanston, Illinois. In AAU competition, in the weight-lifting meets, he

was awarded the "Mr. Illinois" title in 1952 and the "Mr. Chicago" title in 1955. He was hired as a teacher at the Calumet School (School District 132) for the period commencing with the first day of the school term in September 1958. His curriculum consisted of health education and physical education. In physical education he taught speedball, touchball, basketball, volleyball, tumbling, balancing, wrestling, etc., and coached track and field, basketball and softball teams. In health education he taught mental and emotional health, hygiene, etc. He had no difficulty in six out of seven classes he taught. The seventh class consisted of approximately 45 seventh-grade boys, containing a half dozen with unusual behavior problems.

On April 13, 1960 three members of the Board of Education, during a regular meeting of the Board, voted to suspend plaintiff from his teaching duties, effective April 15, 1960. That resolution was duly recorded in the minutes. The minutes do not show what grounds, if any, were presented to justify the suspension. On the following day the superintendent of the school district wrote a letter to the plaintiff which stated that his services "were no longer required." The letter did not specifically state whether the plaintiff was suspended or discharged, nor did it give any reasons for the action taken.

On April 19, 1960 a letter was written by plaintiff's attorney to the Board. In that letter it was stated that the plaintiff did not concede or know of any reason which would entitle the Board to discharge him, and it was further stated that if the Board had some complaint or alleged cause for discharge, the assumption must be made that such cause for discharge would be of a type which would be remediable under Section 24–3 of the Illinois School Code, thereby requiring that plaintiff be given the "warning" notice provided for in the statute. The letter quoted the statute which provided:

24

"Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges."

On April 27, 1960, at an adjourned meeting of the Board of Education, four members of the Board voted that the plaintiff be dismissed as a teacher and that a letter of notification should be sent to him to this effect. The minutes of the meeting do not set out any cause or causes for the dismissal. Apparently, no immediate notice of this action was given to the plaintiff.

It next appears in the record that a letter dated May 13, 1960 was sent by plaintiff's attorney to the Board demanding that the Board either file formal charges against the plaintiff or that it permit him to resume his teaching duties, or that his salary be continued while he remained available to go to work. On May 17, 1960, by registered mail, the Board formally notified plaintiff that he was dismissed as a teacher. No date was given when the dismissal was to become effective, but the grounds for the dismissal were set forth as follows:

"1. Inflicting corporal punishment on students, thereby injuring them, and thereby violating the rules of the Board of Education prohibiting corporal punishment.
"2. Swearing and using other improper language in the presence of students and teachers.
"3. Exhibiting an ungovernable temper.
"4. In the opinion of the Board of Education, the best interests of the school require your dismissal."

On May 19, 1960 the attorneys for the plaintiff, in a reply letter, excepted to the validity of the charges alleged against the plaintiff in the notice. The ex-

25

ceptions were that the written notice of such charges had not been served upon the plaintiff at least 60 days before the effective date of the dismissal; that charges, possible of correction, set out in the notice would require previous warning and notice in accordance with the School Code; and that the charges were so vague and indefinite that it was impossible to prepare a defense. Formal demand was made for a hearing and a bill of particulars. The School Board furnished a bill of particulars and public hearings were held. Eight such hearings were held from June 11, 1960 through September 26, 1960, at which thirty witnesses testified—twenty of them on behalf of the plaintiff. On October 20, 1960 the Board made its decision, finding the charges fully supported by the evidence, confirming its earlier action of April 13, 1960 suspending plaintiff and confirming its dismissal of plaintiff, the effective date of which was November 2, 1960. In the written decision of the Board one of the conclusions expressly set out was that the charges against the plaintiff were not of a remediable nature within the meaning of Section 24–3 of the School Code, thereby rendering the warning notice provision of that section inapplicable.

Under the provisions of the Administrative Review Act, the plaintiff took an appeal to the Circuit Court of Cook County, which court, on motion of the plaintiff, entered a summary judgment against the defendant, reversing the Board's order dismissing the plaintiff from his teaching duties. No question was raised as to the Board's decision on the merits, but the summary judgment was entered on the ground that the Board had not complied with the requirements of Section 24–3 in the giving of proper notice of dismissal. The Board appealed from the judgment of the Circuit Court. In its opinion in Miller v. Board of Education, 37 Ill App2d 451, 186 NE2d 790, the Appellate Court reversed the summary judgment entered

in the trial court, restricting its holding to the point urged by the Board that the notice of dismissal was properly given relative to the 60-day period prescribed by the statute.

In this court, in the instant case, the Board contends that its finding dismissing the plaintiff as a teacher was supported by ample evidence. The plaintiff contends that the grounds alleged and upon which the hearings were predicated were remediable and that a proper determination of remediability had not been made by the Board of Education before the hearings commenced. It is also argued that the findings of the Board were against the manifest weight of the evidence, and that the plaintiff did not receive a fair trial before the Board.

The Administrative Review Act (Ill Rev Stats 1945, c 110, §§ 264–279) provides that upon review the findings and conclusions of the administrative agency shall be held to be prima facie true and correct and will not be set aside unless its decision is found to be without substantial foundation in the record or is against the manifest weight of the evidence.

According to Section 6–36 of the School Code of 1959 (Ill Rev Stats 1959, c 122, § 6–36), a board of education has the right to dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause. It also has the power to dismiss a teacher whenever, in its opinion, such teacher is not qualified to teach, or whenever, in its opinion, the interests of the school require it. Further, the provisions of the School Code which are called the Teacher Tenure Act, Sections 24–1 to 24–8, expressly provide that the power of a board to dismiss a teacher is in no way modified or diminished by the Tenure Act except with respect to the procedure of discharge. On the other hand, it has been held that the Tenure Act should be so construed that teachers who have qualified for contractual continued service are entitled

27

to have the statute construed in a manner consistent with the prime purpose of protecting the favored status which they have earned. Hauswald v. Board of Education, 20 Ill App2d 49, 155 NE2d 319. The Teacher Tenure Act, which was enacted in 1941, was intended to protect Illinois teachers whose employment otherwise was at the mercy of the school boards. In Donahoo v. Board of Education, 413 Ill 422, 425, 109 NE2d 787, 789, the court states:

> "Its object was to improve the Illinois School system by assuring teachers of experience and ability a continuous service and a rehiring based upon merit rather than failure to rehire based upon reasons that are political, partisan, or capricious."

Under the provisions of the Illinois School Code, a board of education has power to dismiss a teacher who has entered upon contractual continued service (more than two consecutive school terms), but only by following the procedure prescribed in the Tenure Act. In Carl L. Smith v. Board of Education, 405 Ill 143, 89 NE2d 893, it is said that where the language used in a statute is plain and certain it must be given effect. As a safeguard against the arbitrary exercise of the board's power of dismissal the Tenure Act provides, in Section 24–3, that if the charges assigned for dismissal are "on account of causes that may be deemed to be remediable" the board, before serving notice of such charges, must give the teacher a written warning notice, stating with particularity the causes which, if not removed, may result in the bringing of dismissal charges. It is also clear that the warning notice must be tendered at such a time as will allow the teacher to whom it is directed a reasonable time in which to correct the alleged de-

28

ficiencies. In Keyes v. Board of Education, 20 Ill App2d 504, 508–509, 156 NE2d 763, 766, the court states:

". . . The underlying reason for such provision, is the fact that the causes for dismissal referred to in Secs 6–36 and 7–16 of the School Code are general in their nature. If the causes, upon which the Board predicates its dismissal can, by their nature, be said to be remediable, then in order that the teacher may have an opportunity to remedy the same, he or she is entitled to a warning notice of the specific charges constituting such causes. *Obviously, compliance with this warning notice provision cannot be had unless, prior to giving a dismissal notice, determination is made as to whether the cause or causes relied upon are remediable. . . .*

"The determination of the Board in the first instance that the causes of dismissal are not remediable and its final decision on the hearing, are both subject to review. *If the causes relied on in the instant case were in fact remediable, then the requirement that a written notice be given plaintiff was mandatory and failure to comply therewith, deprived the Board of jurisdiction.*" (Emphasis added.)

In the instant case the first duty of the Board was to determine whether the charges which had been lodged against the plaintiff were remediable in nature. In an article in Volume 52, Illinois Bar Journal, page 422, Thomas C. Kelleghan has stated:

"It has been the distinction between *remediable* and *irremediable* causes which has bedeviled the courts, however, and which has created the need for a 'guiding star.' They have uniformly ruled

29

that the school boards have the discretion in the first instance to determine whether the causes for dismissal are remediable, and to confirm that finding at the conclusion of the hearing. The courts have just as consistently held that they have the power to test that finding on review for abuse of discretion by the school board."

See also Meridith v. Board of Education, 7 Ill App2d 477, 130 NE2d 5; and Keyes v. Board of Education, supra.

In the instant case there is no showing in the record that the Board made an express initial determination on the issue of remediability. It may be said that by not giving a warning notice the Board inferentially determined that the charges were irremediable. It would seem that the better practice would be for the Board to put itself on record before the hearing as to that question. This was done in Werner v. Community Unit School Dist. No. 4, Marshall County, 40 Ill App2d 491, 190 NE2d 184. However, the determination of the Board in the first instance, assuming such determination was made, and its final decision on the hearing that the causes of dismissal are not remediable, are subject to review. Keyes v. Board of Education, supra, and Hutchison v. Board of Education, 32 Ill App2d 247, 177 NE2d 420.

In the instant case there was in evidence a "teacher observation report" made by the superintendent on March 17, 1960, less than 30 days prior to the time that plaintiff was discharged. In that report the plaintiff was commended upon his successful inculcation in the students of the dangers of the use of alcohol. The classroom behavior was said to be orderly and businesslike in all but the seventh class, which consisted of approximately 45 seventh-grade boys, and contained "some half dozen unusual behavior problems," which class had been a difficult group for the

30

teacher during most of the year. The report also stated that in a meeting with the plaintiff after school it was pointed out by the observer that "there remained the need for having the seventh group managed."

At the hearing the superintendent of the school district testified that he was not friendly toward the plaintiff. He also testified that the plaintiff had talked to him about cutting the size of the seventh class, and that he tried to do so, with no success. The superintendent testified that from a teaching standpoint plaintiff's knowledge and organization of the classes and his health and physical education program were all right, and that for some time a group of younger teachers had been disturbed about problem students, and even went so far as to suggest that they be "passed" so as to get them out of the school.

The plaintiff had twenty witnesses testify in his behalf—many of whom were students or former students in the school. The were unanimous in their testimony that the plaintiff did a good job as a teacher and that they had not heard him swear, nor seen him strike a student. There was also testimony from the students that other teachers had used profane language and had struck students. The witnesses admitted that the plaintiff did have some difficulty in controlling his temper. A teacher in another school in the same district whose brothers were in the plaintiff's class testified that when she was in the Calumet Park School she had an opportunity to observe the effects of plaintiff's teaching, and thought he had definitely developed the physical activities of her brothers. A mother testified that her three children had been taught by the plaintiff and that she had worked for some time in the school as a playground guard and that, in her opinion, the plaintiff was a good teacher.

One cause for dismissal against the plaintiff was that he had inflicted corporal punishment on students. On January 5, 1959 the Board passed a resolution which appears in the minutes of the Board's meeting as follows:

"1) Moved by Flowers and seconded by Smith that the use of corporal punishment by all school personnel shall be prohibited.

" . . .

"2) Moved by Smith and seconded by Flowers that a violation of the policy on prohibition of corporal punishment is cause for dismissal."

On January 7, 1959 a Special Staff Bulletin was circulated from the superintendent to all teachers in the Calumet High School. It stated: "Resolution passed prohibiting use of corporal punishment by school personnel violation to be cause for immediate dismissal." In its bill of particulars drafted in support of the charges against the plaintiff five separate incidents are recounted in which the plaintiff is alleged to have inflicted corporal punishment on students. No evidence as to one incident was produced at the hearing, and it was stricken. Another of these incidents occurred about two months before the rule prohibiting corporal punishment was promulgated, and therefore, it need not be considered.* The other three incidents

---

* The plaintiff, as apparently was his duty under the rules of the school, was attempting to take a boy named Gannuscio to the office of the principal. Gannuscio resisted him (physical resistance) and attempted to pull a locker down on the plaintiff. Gannuscio was a problem student. He testified at the hearing that he had previously hit a woman teacher with his fist; that he broke another student's glasses; and that he had set fire to a car across the street from the school while school was in session. He further testified that while he had not injured any girls in the school he did injure one girl outside of school, and that he was in trouble for shoplifting.

took place during the time when the plaintiff was attempting to control a class of 45 boys, a number of whom were considered to have serious behavior problems and who were referred to as "teen-age rebels."

■ This court must take judicial notice of the present atmosphere existing in the schools of this County. The purpose of a school is to convey to the students knowledge which will enable them to go further in the educational field and to help them attain success in life. In order for a teacher to function properly there must be some way of implementing the requirement that the students behave in an orderly and respectful manner. That in many cases students do not so behave is common knowledge.

Another incident referred to in the bill of particulars was the Heide case in which the student, Heide himself, testified that the slap he got from the teacher was well deserved, was approved by his mother, and made him a better student.

■ Another incident concerned an eighth-grade student, Murphy, who was in the plaintiff's physical education class. Murphy testified that in their class, since it was the last, they always picked up the gym mats. The plaintiff told them to pick up the mats and, instead, the class was running around the gym. Murphy was running and as he picked up a mat one of the boys pushed him over, knocking him off balance, and he started to chase the boy. One of the older boys was chasing one of his friends and Murphy, as he ran by, tripped him. The boy then started chasing Murphy. He started running from the boy, and the plaintiff grabbed him by the arm, took the other arm, and put his knee "sort of" in his back "and shoved me, and I fell off balance. That is, my back, it did not—it hurt, but nothing serious happened to it." He stated that the plaintiff lifted him an inch or so off the floor and shoved him and he fell on the gym floor. Murphy further testified that there was a lot

of horsing around in the gym class and the boys got pretty rough towards the end of the day. That day they were taking wrestling in physical education class and when the time came to put away the wrestling mats the boys did not immediately respond. Murphy felt that he had done his share and was running around and around the gym when the plaintiff reached out and grabbed him. He further testified that it was probably his momentum, as much as anything, that caused him to go forward and fall on the gym floor. Murphy stated that he was not angry at the plaintiff. He never heard the plaintiff swear and thought he was a good teacher. On this incident the Board found that the plaintiff had placed a knee against Murphy's back, lifted him off the floor of the school gymnasium, and then dropped him, injuring the student's back. This finding is against the manifest weight of the evidence.

█ Another incident concerned Hewitt, a student who was described by his room teacher in the roster work book as "resentful, defiant, rude, sullen, or apt to 'sass' adults." The finding of the Board of Education was that Hewitt was dizzy because he had hit his head against the locker in the locker room and on that account had stepped out of line; that the plaintiff called him a "damn little rebel," grabbed him in a "bear hug" fashion, and bounced him two or three times on the blacktop pavement; and that as a result of this occurrence the student had a sprained ankle, cuts on the neck, and the left side of his face was swollen. This finding was based on the testimony of two teachers 50 to 75 feet away. There were discrepancies between their testimony and statements they had given to the superintendent. A third teacher described the incident in detail and testified that the plaintiff only took Hewitt by the arm and directed

him back into line. The school nurse's testimony raised doubt as to whether Hewitt's ankle had been injured on the day of the occurrence or on the day before. A student testified that he was there when the event happened and that the plaintiff did not hit Hewitt but shook him to put him back in line after Hewitt had several times refused to obey. The finding of the Board as to Hewitt is against the manifest weight of the evidence.

The further finding of the Board is that the plaintiff became angry with Mr. George, a principal in the school district, because George had excused certain students from staying after school when the plaintiff had ordered them to stay, and that the plaintiff then told George, "Hell, you can teach your own damned health classes." The testimony given by George is that he had told the girls they could go home after he had knowledge that the plaintiff had told them they would have to stay after school. When George countermanded the plaintiff's order he did not consult with the plaintiff or tell him in advance the ruling he was going to make. George also testified that he did not make a practice of countermanding orders of teachers without asking what, where or why, and that this was the first and last time. The plaintiff, when he was informed by the girls that George had told them they could go home, went to George and asked him if he had made such a statement. George said he had; the plaintiff became angry and said, "Here, you can teach your own health class after this . . ." It is evident from the record that the conduct of George in countermanding the plaintiff's orders without consultation was wrong; and the statement that the plaintiff in talking to George used the word "hell" is not testified to by George in the hearing. It is true that there was a statement made

by George, not under oath, in which he did say that the plaintiff had used the word "hell." His testimony under oath is that he used the word "here." The finding of the Board is not supported by the evidence.

■ There was a further finding of the Board with reference to occurrences at a tournament basketball game to the effect that the captain of the team representing the Calumet Park School was presented with a second-place trophy; that the plaintiff took the trophy from the captain, broke it in pieces on the gymnasium floor, and used indecent language to the man who presented the trophy; and that he further used profane language in the locker room in the presence of students. The evidence also shows that in a fiercely contested game beset with many disputable decisions by the officials, the plaintiff, who was the coach of the Calumet School team, did not conduct himself with restraint or good manners. His attitude and actions were those of an aggressive, overwrought player rather than a coach. Although his judgment was poor, we are of the opinion that the record does not support the finding that his temper was uncontrollable. The finding of the Board to this effect was therefore against the manifest weight of the evidence.

The Board in its decision stated its conclusion that "The charges against the Respondent were not of a remediable nature within the meaning of Section 24–3 of the School Code and the warning notice provision of said Section is inapplicable to this case."

■ While there is evidence in the record that plaintiff had a fiery temper, we must consider the type of students with whom he was dealing and the rather fantastic atmosphere which existed at the school. It must be said that the finding of the Board that the conduct of the teacher was not remediable is against the manifest weight of the evidence. Consequently,

36

the plaintiff should have been given the warning notice provided for in Section 24–3 of the Tenure Act. Keyes v. Board of Education, 20 Ill App2d 504, 156 NE2d 763.

Plaintiff also contends in this case that he did not receive a fair trial before the School Board. In Lusk v. Community Consol. School Dist. No. 95, 20 Ill App2d 252, 155 NE2d 650, the court says:

> "The statute provides that a teacher may ask for a hearing on the question of whether he should or should not be dismissed and we believe that this is a fundamental right, not a mere formality. Not only is the teacher entitled to a hearing, but he is entitled to a fair hearing. . . ."

The Superintendent of Public Instruction of the State of Illinois issues an Educational Press Bulletin, printed by authority of the State of Illinois, which is the official monthly publication of his office. In Volume 52, No 3 (May 1961), there is an article by Harold G. Baker, Jr., member of the Executive Committee of the Shool Law Section of the Illinois State Bar Association, entitled "Legal Rights and Duties of Teachers." In that article Mr. Baker says:

> "The duties of the board personnel during the hearing are not defined by statute. These duties require, however, unusual application of common sense and fairness. This is particularly so because the board is unfortunately required to act as prosecutor, judge and jury. In most instances, the attorney for the board should and will act as prosecutor. *The problem of ruling upon objections,* procedural points and other legal matters *is most fairly solved if the board retains another, independent attorney* to advise the board and its president on such matters. In this way, the hear-

ing takes on the semblance of a trial before a judge without a jury, a commonplace occurrence in our Illinois courts." (Emphasis added.)

Mr. Baker also points out that the courts review the record with particular concern for procedural matters and, if these are lacking in the basic elements of fair play, they are more apt to critically analyze the evidence, for after all, the very substantial rights of a teacher are involved. See Gigger v. Board of Fire & Police Com'rs, of East St. Louis, 23 Ill App2d 433, 163 NE2d 541. We agree with the position taken by Mr. Baker.

In the instant case the attorney representing the Board acted as adviser to the layman Board with reference to the admission of evidence and other procedural matters. We will give a few examples of the rulings made by the Board on advice of the Board's attorney. In the record it appears that the attorney for the Board held a consultation with the chairman, which was objected to by the attorney for the plaintiff. The attorney for the Board stated that in his opinion he represented the Board and he had a right to confer with the Board during the hearing, and the chairman of the Board said that the Board intended to confer with their attorney in order that they might do things in what they felt was the proper way. Again, when the mother of Gannuscio was testifying as to what Gannuscio told her at her home, out of plaintiff's presence, the chairman of the Board, over the objection of the plaintiff, permitted her to testify. Further, where the plaintiff offered certain official school records which were objected to by the counsel for the Board, and the Board sustained the objection, the counsel for the Board stated that he did not surrender his right to advise the Board on any question asked, including what rulings they should make on questions asked by the Board's counsel and ob-

38

jected to by the attorney for the plaintiff. In endeavoring to determine the conduct of the other teachers with regard to corporal punishment, the attorney for the plaintiff was, on the advice of the Board's attorney to the Board, forbidden to ask such questions. The attorney for the Board attempted to make several offers of proof which the Board forbade on advice of the same attorney. The plaintiff was prohibited from bringing in additional pupil witnesses to support his contentions with regard to the teaching ability and conduct of the plaintiff. To enumerate the numerous other rulings of the same character made by the Board on the advice of its counsel would prolong this opinion to an excessive length. Both this court and the Circuit Court can set aside the findings of an administrative board if they are against the manifest weight of the evidence. Parker v. Department of Registration and Education, 5 Ill2d 288, 125 NE2d 494; Adamek v. Civil Service Commission, 17 Ill App2d 11, 149 NE2d 466; Sudduth v. Board of Fire and Police Com'rs, 48 Ill App2d 194, 198 NE2d 705.

In a recent case, Eidenmiller v. Board of Education, 28 Ill App2d 90, 170 NE2d 792 (Abst), the court sustained the judgment of the Circuit Court, setting aside the finding of the School Board dismissing a teacher. In a specially concurring opinion by Mr. Justice Smith, he says:

"The Teacher Tenure Law was designed to cure then existing evils in our school system by providing a speedy, simple procedure for the dismissal of teachers based on charges, notice, a fair hearing and a speedy judicial review under the provisions of the Administrative Review Act. These benign purposes become obscure in this record. In Lusk v. Community Consolidated School District, 20 Ill App2d 252, we had occasion

39

to say that a teacher is not only entitled to a hearing, she is entitled to a *fair* hearing, that the administrative agency does not represent one party against the other, 1 Illinois Law and Practice, page 461, and 'our study of the record raises a grave doubt that the hearing afforded in this case was the type of hearing which the legislature had in mind when it enacted the Teacher Tenure Law.' What we then said of that record we now say of this. In so doing we fully recognize that the factual findings of an administrative tribunal are by statute prima facie correct, that we are not concerned with the wisdom of the decision, and that the decision of an administrative agency will be set aside only where the same is without substantial support in the record or is manifestly against the weight of the evidence. Keyes v. Board of Education, 20 Ill App2d 504; Pearson v. Community Unit School District No. 5, 12 Ill App 2d 44. We are thus circumscribed and inhibited by these rules when it may be said that a fair hearing was held. We do not understand that they circumscribe or inhibit us from determining whether the hearing, as conducted, was fairly conducted within the purpose, intent and principles of the Teacher Tenure Law."

The court also says:

". . . In discussing dual functions similar to those here, Judge William J. Brennen, Jr. (now Justice of the United States Supreme Court) had this to say: 'The substantiality of evidence must take into consideration whatever in the record fairly detracts from its weight,' In re Larsen, 17 NJ Super 564. . . ."

And with reference to the case before it, the court further says:

40

". . . In the case before us now, we deal not with a dual role, not with a triple role, but with the quadruple roles of complainant, prosecutor, judge and witness in a single tribunal. Our Supreme Court once said of a similar statute that, 'a statute which compels a litigant to submit his controversy to a tribunal of which his antagonist is a member makes his antagonist his judge and does not afford due process of law.' Commissioners of Drainage Dist. No. 1 v. Smith, 223 Ill 417. It is beyond the perimeter of our jurisdiction to question the validity of the statute here involved or the authority of the Board to proceed under it. It is within the perimeter of our jurisdiction, and it is our duty, to determine whether this record had its birth in a fair hearing, before an impartial tribunal within the principles, purposes and intent of the Teacher Tenure Law. . . ."

Mr. Justice Smith concludes his opinion by finding that the charges preferred against the teacher found no substantial support in the evidence, and he further says:

". . . For this reason, and for the further reason, that the hearing disclosed by this record, as conducted, was not in keeping with ordinary concepts of American justice nor within the spirit, intent, principles or the letter of the Tenure Act, the judgment of the trial court should be affirmed. . ."

 We are in accord with what is said in that opinion and conclude that the plaintiff in the instant case was prevented from having a fair trial by the multiple capacities in which the School Board and its attorney were functioning. We also conclude that the charges which were proved against the plaintiff were remediable and would therefore have required a warn-

ing notice. The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.