ROY AULWURM, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF MURPHYSBORO COMMUNITY UNIT SCHOOL DISTRICT OF JACKSON COUNTY, Defendant-Appellee.

Fifth District    No. 76-25

Opinion filed November 17, 1976.

G. J. MORAN, J., dissenting.

Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellant.

Wolff, Jones & Lawder, of Murphysboro, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, Roy Aulwurm, filed a complaint for administrative review of the decision of defendant, Board of Education of Murphysboro Community Unit School District No. 186 of Jackson County, Illinois, dismissing him from employment. This decision, made on April 16, 1975, after hearings held on March 18, 1975, and April 1, 1975, was confirmed by the circuit court of Jackson County in an order entered in December, 1975. Plaintiff brings this appeal to set aside the circuit court's order and seeks reinstatement as a teacher.

Plaintiff, who was teaching during his third year at Murphysboro High School, had attained contractual continued service status (tenure) by virtue of the provisions of article 24 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par 24—11).

On January 16, 1975, the Board sent plaintiff a notice of dismissal effective immediately preceding the close of school on the last day of the school term ending in June, 1975. The reasons given in the Board's letter informing plaintiff of its action were as follows:

"1. Your insubordination and failure to follow instructions of your supervisors;

2. Your failure to cooperate with your supervisors;

3. Your lack of preparation for your teaching duties and assignments;

4. Your lack of care for the physical school facilities of the District;

5. Your failure to comply with stated policies of the Board of Education;

6. Your failure to perform the teaching duties assigned to you;

7. Your failure to carry out tasks assigned to you by your supervisors;

8. In the opinion of the Board of Education the best interest of the school require your dismissal."

A bill of particulars was requested and provided. It stated that plaintiff had failed to submit lesson plans and attendance forms as required by the school board, and had ignored specific requests for performance of these tasks on several occasions over a period of two years. Additionally, it was stated that plaintiff had failed to turn in needed reports dealing with student recognition as requested by his superiors. The bill of particulars also cited plaintiff's failure to provide the students of the district an opportunity to participate in dramatics, music and voice by not giving a spring play though obligated to do so. Finally, in plaintiff's duties as an athletic coach, he was cited with failing to cooperate with his supervisors, and being absent and late for team practices.

On March 19 and April 1, 1975, hearings were held before the Board, at which times testimony was heard concerning the dismissal. At the first hearing, counsel for plaintiff moved to dismiss the action on the grounds that the Board lacked jurisdiction for the hearing, as all of the charges were remediable and the Board had failed to give written warnings and an opportunity to remedy the defects of his performance as required by section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12). The Board denied this motion. On April 15, 1975, the Board adopted a resolution approving the dismissal of plaintiff. Attached to the resolution was a memorandum of decision in which the Board detailed its findings with respect to each charge made against plaintiff.

■■ The first issue presented for our review is whether the School Board had been deprived of jurisdiction to act in this matter. The Illinois School Code provides that a tenured teacher may be dismissed only if the school board, when the charges against a teacher are remediable, first supplies him with a written warning:

"Before service of notice of charges on account of causes that are considered remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.)

If the causes are remediable, and the teacher is not given proper notice in writing, then the failure to provide the warnings required by the School Code deprives the Board of jurisdiction (*Hutchison v. Board of Education*, 32 Ill. App. 2d 247, 177 N.E.2d 420.) It is conceded that no written warnings were given in the instant case. The dispute concerns whether the causes that were the basis of the charges were remediable. Plaintiff contends they were, the Board determined from the beginning that they were not.

A board of education has discretion in the first instance to determine

whether the causes constituting grounds for dismissal are remediable. (*Wells v. Board of Education,* 85 Ill. App. 2d 312, 230 N.E.2d 6; *Werner v. Community Unit School District No. 4,* 40 Ill. App. 2d 491, 190 N.E.2d 184.) In the instant case, the Board initially, in sending its notice of dismissal, determined that the causes were irremediable, and later, in approving plaintiff's dismissal, made formal findings confirming its initial determination. The formal findings were rendered only after a bill of particulars was provided plaintiff and public hearings had been held. Mindful of its duty to accord plaintiff a fair hearing, the Board employed separate trial counsel to advise it as required by *Miller v. Board of Education,* 51 Ill. App. 2d 20, 200 N.E.2d 838. Plaintiff was represented by counsel at all times during the proceedings and was afforded his right to confront and cross-examine the witnesses against him. The Board considered the sworn testimony of plaintiff's witnesses. The attorney for the Board did not rule or attempt to rule on procedural or legal issues as in *Miller,* nor did any member of the Board testify against the teacher or serve as an advocate against him as in *Eidenmiller v. Board of Education,* 28 Ill. App. 2d 90, 170 N.E.2d 792. The Board supported its conclusions with lengthy findings of fact with respect to each charge brought. Seven of the charges were found to be sustained by the evidence and one was not.

We have recently discussed the standard of review to be employed in cases of this nature in *Hagerstrom v. Clay City Community Unit School District No. 10,* 36 Ill. App. 3d 1, 343 N.E.2d 249, and adhere to the standard adopted therein, as well as the direction of section 11 of the Administrative Review Act (Ill. Rev. Stat., ch. 110, par. 274) that "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." A full and independent review of the record convinces us that the evidence presented justified the Board's finding that the causes supporting charges against plaintiff were not remediable. The test for determining remediability has been stated as follows:

> "For the Board to have found the causes irremediable under current interpretation of the statute, they must find that damage had been done to the students, the faculty or the school itself, and the damage could not have been corrected if warnings had been given by the teacher's superiors when they learned of the cause." *Yesinowski v. Board of Education,* 28 Ill. App. 3d 119, 123, 328 N.E.2d 23, 27.

■■ With respect to each of the charges that the Board determined to be sustained by the evidence, the Board specifically found that the causes for each were nonremediable and detrimental to the school, the students, and the faculty; findings which have substantial foundation in the record.

While some of the causes underlying the charges against plaintiff, when considered singly and separately from the other causes, may well have been remediable in nature, the combination of the causes created a result of a different nature; one which could not have been corrected even though warnings had been given by plaintiff's superiors when they learned of each individual cause. *Paprocki v. Board of Education*, 31 Ill. App. 3d 112, 334 N.E.2d 841, cited by plaintiff, is distinguishable, we believe, from the case at bar. In *Paprocki* it was undisputed that all the causes were at one time remediable and the School Board found them to have become irremediable only because they continued over a long period of time. The court, however, reversed the Board's dismissal of the plaintiff because it had not sent the statutorily required written notice to the plaintiff. The court held that the Board could not avoid the statutory mandate of notice through the simple passage of time. In the case at bar, unlike *Paprocki*, plaintiff's course of conduct over a long period of time, that culminated in the charges of failure to follow the instructions of his supervisors and failure to comply with the stated policies of defendant Board, exhibited a defiant attitude in plaintiff in the nature of a consistent challenge to authority, which was itself irremediable. (See *Glover v. Board of Education*, 21 Ill. App. 3d 1053, 316 N.E.2d 534; *McLain v. Board of Education*, 36 Ill. App. 2d 143, 183 N.E.2d 7.) Irreparable damage to the school had been done by the time the letter of dismissal had been sent and, we believe, would not have been avoided before that time. The tenure provisions of the School Code are not intended to preclude dismissal where a teacher's conduct is detrimental to the operation of the school. (*Lombardo v. Board of Education*, 100 Ill. App. 2d 108, 241 N.E.2d 495.) Consequently, we hold that the Board was not deprived of jurisdiction by its failure to give plaintiff written warnings before causing charges to be brought against the teacher.

Plaintiff next contends that the decision of the Board was against the manifest weight of the evidence. Our independent review of the record leads us to conclude that the decision made by the Board was supported by the evidence. The Board heard the testimony of 15 witnesses and considered numerous exhibits. The most forceful and authoritative testimony regarding the grounds for dismissal of plaintiff was given by Theodore Schoberg, an independent evaluator employed by the Board. Mr. Schoberg, who had previously taught at both the college and high school levels, had been a superintendent of schools and had coached, testified that he had observed plaintiff's teaching many times over three school years. He gave many instances of plaintiff's lack of preparation for his classes and poor teaching techniques. The contents of the evaluation reports by Schoberg were always communicated to plaintiff and his supervisors. Schoberg stated that plaintiff had failed to heed most of the

suggestions he had made to him to help him improve his teaching. In Schoberg's opinion, the plaintiff's lack of preparation and planning made for "a very ordinary or substandard performance."

■■ Plaintiff himself testified that he knew of the Board's policy requiring the preparation of lesson plans and failed to comply with it on several occasions, even after numerous written and oral requests to do so. Plaintiff also admitted that he knew of the policy concerning the recording of absences of students who failed to attend classes and that he deliberately did not do this in accordance with the policy. Plaintiff turned in absence reports only when specifically asked to do so. It is undisputed that plaintiff was notified to provide the school administration with reports that formed the basis for student awards, and knowingly failed to submit them. The Board was entitled to give little weight to plaintiff's excuse that he did not know any of the students eligible for the awards. In addition, ample evidence exists in the record of plaintiff's negligence in failing to give the student play which he was assigned to produce, thus denying the students a chance to participate in a musical-dramatic event. Evidence was presented tending to show that plaintiff had been derelict in his duties as football and wrestling coach, being tardy or absent on several occasions for both practices and games. Although plaintiff presented reasonable excuses for some of his absences, there was sufficient evidence to sustain the Board's findings with respect to this charge. Finally, the evidence shows that plaintiff received an assignment to prepare a syllabus for his classes on communication and poetry and failed to carry it out. The decision of the school board dismissing plaintiff was not contrary to the manifest weight of the evidence, and has substantial foundation in the record.

For all of the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.


Affirmed.


KARNS, P. J., concurs.


Mr. JUSTICE GEORGE J. MORAN, dissenting:

The majority opinion affirms a trial court decision based on a charge never presented by the Board and, consequently, never defended by Aulwurm. It is stated that while the charges made by the Board are of a remediable nature when considered separately, the composite effect of the charges elevates their significance to a standard of irremediability. No

other decision is cited as sustaining this result, nor does the majority bother to explain the rationale.

Section 24—12 of the Illinois School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) provides in relevant part:

"Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Section 10—22.4 in the manner hereinafter provided."

Section 10—22.4, one of the provisions dealing with the duties of the school board, states the grounds for dismissal in the following manner:

"* * * for incompetency, cruelty, negligence, immorality or other sufficient cause and to dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the school require it, subject, however, to the provisions of Sections 24—10 to 24—15, inclusive. * * *"

The statements above and the following language from section 24—12 indicate a clear legislative intent that the Board is to determine all formal charges and that the teacher is to be apprised of the nature of these charges prior to the Board's hearing in order to prepare a defense:

"If the dismissal or removal is for any other reason or cause it does not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within 10 days after the service of notice as herein provided. * * * If so requested, a bill of particulars shall be delivered to the teacher, within five days after receipt of the request. * * * The teacher has the privilege of being present at the hearing with counsel and of cross-examining witnesses and may offer evidence and witnesses and present defenses to the charges. The board may issue subpoenas, requiring the attendance of witnesses at any hearing and, at the request of the teacher against whom a charge is made, shall issue such subpoenas, but it may limit the number of witnesses to be subpoenaed in behalf of the teacher to not more than 10. All testimony at any hearing shall be taken under oath. * * * Before service of notice of charges on account of causes that are considered remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges. The decision of the board as to the existence of reasons or causes for dismissal or removal is final unless reviewed as provided in Section 24—16 of this Act." Ill. Rev. Stat. 1973, ch. 122, par. 24—12.

In my opinion, the above statutory references make it clear beyond doubt that the legislature intended to vest the Board with the sole and

exclusive right to determine the charges for dismissal of a teacher and that all charges must be specifically brought out at the Board hearing in order to allow an adequate defense against them. (See *Paprocki v. Board of Education*, 31 Ill. App. 3d 112, 114, 334 N.E.2d 841.) However, neither the specific charges sent to Aulwurm nor the requested bill of particulars stated that the totality of the charges created a condition of irremediability. The record reflects that the first reference to the composite effect of remediable charges attaining the status of irremediability was made by the trial judge when he affirmed the decision of the Board:

> "That the charges against the plaintiff, a tenured teacher, when considered singly and separated from the other charges and facts surrounding each of them, were remedial in nature; however, the plaintiff's course of conduct during his employment that culminated in the charges of failure to follow instructions of his supervisors and failure to comply with stated policies of the defendant Board of Education continued for a sufficient period of time without remedy by the plaintiff so as to become irremedial in nature obviating the necessity of written notice thereof by the Board required by Ill. Rev. Stats., 1973, ch. 122, par. 24—12."

This was a charge of a separate and distinct nature not previously argued by the parties. In reaching this conclusion, the trial judge violated two provisions of section 24—12 by making a new charge he was not authorized to make and by depriving Aulwurm of notice of this charge and the opportunity to defend against it. Since this point provided the basis for the trial court's decision, I feel that the judgment was clearly erroneous and effectively circumvented the spirit and purpose of section 24—12. Sustaining such an error when the trial judge determined that the charges by the Board were individually remediable cannot be justified.

Even if the Board had specifically charged that the accumulation of other charges constituted an irremediable cause for dismissal, I cannot agree that the record supports such a conclusion.

The first charge in the bill of particulars concerned plaintiff's failure to file lesson plans as required by the school board. The evidence indicates that the plaintiff was aware of the requirement to file and was reminded on several occasions through performance reports and discussions with his superiors of the requirement but failed to file except sporadically. Under either standard of review, this particular charge is amply supported by the evidence.

The second charge in the bill of particulars dealt with plaintiff's failure to file absence reports. Through the use of a special form, the parents of the school child would be informed when the number of absences from a particular class reached the total of three, and again at the total of five,

and again at the total of seven. After seven absences, the student would automatically fail the course despite his actual performance on the test in the course. The evidence indicates that the plaintiff failed to submit these forms during the initial portion of the 1974-1975 school year. The evidence also indicates that the plaintiff, after he was specifically instructed to submit the reports, did in fact comply. Further, the plaintiff submitted reports of absences to the administration, although initially failing to submit the special form.

Plaintiff was also cited for his failure to submit names of students eligible for special recognition. The evidence clearly indicates that the recipients of the awards were juniors and seniors at the school. The plaintiff's classes were composed primarily of freshmen and sophomores and he had very little contact with the older students. The evidence also establishes that other teachers turned in blank forms because they had insufficient knowledge of which student to nominate. Their failure to nominate any students was apparently not considered to have caused irreparable harm to the students or the school and the failure of the plaintiff to return his blank form cannot seriously be considered as causing irreparable harm.

The fourth charge in the bill of particulars concerned plaintiff's failure to produce a play during the 1973-74 school year. Plaintiff was assigned to produce a play in the fall of 1973. In December of 1973, the plaintiff, the principal, and two other teachers decided to present a musical. In January of 1974, a play was chosen and ordered. The plaintiff, not personally knowledgeable in the area of musicals, relied upon the advice of the school band instructor. He was informed that the musical was satisfactory and could be presented after six weeks of preparation. By March the material had not arrived. The plaintiff called to determine the status of the order and learned that stringed instruments were necessary. He then was informed by the band instructor that the instruments were not available to the band and therefore cancelled his order. As an alternative, plaintiff decided to produce four one act plays. Three of the plays were obtained from the school library and the fourth from the Southern Illinois University Library. After rehearsals had begun, the principal decided that some of the material was objectionable and cancelled the production. While it is undoubtedly unfortunate that no play was presented, the evidence tends to prove that the plaintiff faithfully attempted to perform his duty and the production failed through unforeseen circumstances rather than through any fault of the plaintiff.

The final charge in the bill of particulars concerned the performance of the plaintiff in his duties as assistant football coach. The evidence shows that the plaintiff was not present when football equipment was distributed prior to the commencement of school. However, the evidence

also shows that plaintiff was vacationing in Arizona, that the equipment was distributed prior to the time practice could begin under the Illinois State High School Association Rules, and that plaintiff had returned by the first practice. The evidence indicates that plaintiff was late for one of the games. Prior to the game he informed the other assistant coach of the possibility of his late arrival. He was forced to drive to St. Louis to check on the repairs of his automobile which had been damaged in an accident when bad weather and heavy traffic delayed his return.

The plaintiff was also cited for failure to follow the directive of the head football coach to substitute for the quarterback during a football game. Plaintiff had refused because the substitute had not practiced during the week prior to the game and also because he believed he had sole responsibility for the offensive team as he had the two previous years. The evidence is insufficient to sustain a finding that plaintiff was ever informed of the change in his status.

Plaintiff's failure to aid in the collection of equipment at the end of the season was also adequately explained. His unimpeached testimony indicated that the principal had granted him a personal leave in order to effect the return of his automobile from St. Louis. The evidence here, as with all the alleged deficiencies in his performance of coaching duties, is insufficient to support a dismissal.

Evidence as to plaintiff's alleged failure to prepare a syllabus and to perform his duties as wrestling coach were not cited in the bill of particulars requested by plaintiff and thus were improperly introduced at the hearing.

It is therefore apparent that the only charges supported by the evidence concerned the plaintiff's failure to file lesson plans and submit absence forms. Under the test of irremediability noted by the majority, the Board must have found that irreparable damage had occurred as a result of these failures. Thus, even if the majority's doctrine of accumulated error had legal foundation, it could not be legitimately employed in the instant case.

The dismissal of a tenured teacher is not a procedure that should be lightly undertaken. Not only are the teacher's source of livelihood and expectations of continued employment at stake, but the school and the young people who attend the school may also be detrimentally affected. Where, as in this case, a teacher has served as a football coach, a wrestling coach and a theatrical director, as well as assuming his normal teaching responsibilities, the termination of his services for nearly insignificant reasons creates a grave injustice. For these reasons, I believe that the orders of the circuit court and the board of education should be reversed.