ERNEST D. RIZZO, Plaintiff-Appellant, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF FRANKLIN PARK *et al.*, Defendants-Appellees.

(No. 53799;

First District—December 2, 1970.

*Rehearing denied January 22, 1971.*

Walter C. Wellman, of Lyons, for appellant.

Henry J. Hyde and Richard E. Dowdle, both of Chicago, for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court as modified on denial of petition for rehearing:

Plaintiff appeals from a judgment which affirmed a finding and decision of the Board of Fire and Police Commissioners of the Village of Franklin Park (hereinafter "Board") that plaintiff be removed and discharged as a police officer of Franklin Park and which found that plaintiff had received a fair and impartial hearing before the Board. On appeal plaintiff contends (1) that the decision of the Board was arbitrary and capricious and against the manifest weight of the evidence and (2) that the hearings conducted by the Board were not fair, reasonable or impartial.

The following facts are summarized from the hearings held before the Board on January 30, February 28, July 18, and July 26, 1968. On November 11, 1966, a patrolman from the Northlake Police Department found a 1967 Chevrolet serial number 164877F113850 on fire. The car was owned by Avis Rent A Car System (hereinafter "Avis"). Both the interior and exterior of the car were burned beyond drivable conditions.

Plaintiff testified that "a couple of days" prior to December 5, 1966, the plaintiff saw a 1967 white Chevrolet advertised for sale at a gas station,[1] and that he contacted the owner of the car, one John Campbell, who agreed to sell the car to the plaintiff for $2,295. Plaintiff made a down payment of $15 and received a receipt for this payment signed by

---

[1] There is evidence showing that this car was returned to Avis by a Mr. J. E. O'Brien of Long Island, New York, on December 16, 1966.

John Campell. About the middle of December 1966 the plaintiff, at the request of Campell, purchased from Avis the burned 1967 Chevrolet serial number ending in 3850. Plaintiff paid $375 in cash to Avis for the car and gave the title in blank to Campell for $400. Plaintiff had no idea what Campell did with the car.

The title for the burned 1967 Chevrolet serial number ending in 3850 was issued by the Secretary of State to a John Campell. The title shows the date of purchase as December 12, 1966.

On December 21, 1966, the plaintiff paid the balance on the white 1967 Chevrolet to John Campell. He received a receipt reciting payment of $2,280 by plaintiff for purchase of Campell's white 1967 Chevrolet serial number ending in 3850 (the burned car) signed by John Campell. However, Campell gave plaintiff a title for a 1956 Chevrolet serial number ending in 3850. The assignment of title was notarized December 22, 1966.

On December 22, 1966, the plaintiff made an application for certificate of title for the white 1967 Chevrolet serial number ending in 3850. However, the application was cancelled for correction since it read 1956 and not 1967. Plaintiff then applied for a corrected motor vehicle title. On January 5, 1967, title for a 1967 Chevrolet serial number ending in 3850 was issued by the Secretary of State to the plaintiff.

In October 1967 Avis reported to the Chicago Police Department that one of its cars, a white 1967 Chevrolet serial number 164877J114806 had been misplaced, rented to another person or stolen as of December 16, 1966. Also in October 1967 the acting Chief of Police of the Franklin Park Police Department, William W. Zahn, started an investigation upon receiving certain information with reference to plaintiff's operation of a 1967 motor vehicle.

The plaintiff was driving the 1967 Chevrolet from December 1966 until January 11, 1968, when he traded it in at Edwards Chevrolet. An investigation of the 1967 Chevrolet traded in by plaintiff disclosed that the serial number on the door plate ended in 3850 but that the true serial number had been concealed. On further investigation it was learned that the true serial number ended in 4806, which was the serial number of the missing car. The vehicle was immediately impounded. Upon receiving this information Chief Zahn signed a complaint seeking plaintiff's discharge from the Franklin Park Police force. The charges against the plaintiff included a charge of conduct unbecoming a police officer.

On January 13, 1968, the plaintiff was served with a notice of hearing before the Board and a copy of the written charges filed against him.

An employee of Avis testified that on January 16, 1968, he received a phone call from a man who said he was Mr. Campell. The man on the

phone stated that it was possible he would be implicated in a case and would like to buy the title for the white 1967 Chevrolet serial number ending in *4806*. The employee stated that he would sell the car and quoted the caller a price. When the alleged Mr. Campell came into Avis the employee told him he would have to get the car released from Franklin Park or the State, whoever was holding it. Campell paid $1,950 in cash and the certificate of title was given to him. Title was in Avis from October 4, 1966, when it purchased the car, until it sold the car on January 16, 1968, to Mr. Campell.

A certificate of title was issued to John Campell on January 24, 1968, and on the reverse side title to the 1967 Chevrolet serial number ending in 4806 was assigned to the plaintiff on February 5, 1968.

Officer John LaGioia testified at the hearing that on February 8, 1968, he received a phone call. The caller did not identify himself but LaGioia recognized the voice as that of the plaintiff. Chief Zahn, listening on an extension phone, also recognized the voice as that of the plaintiff. The plaintiff asked LaGioia if he was still looking for John Campell and when LaGioia said that he was, a meeting was arranged at the Franklin Park Police Station. LaGioia stated that Campell should "come in with the prepared statement and that at that point, as far as he was concerned, he would not place him (Campell) under arrest at that time."

A short time later a man walked into the police station and identified himself as John Campell. The man did not show any identification and refused to give his address. The man handed LaGioia a statement dated February 8, 1968, which had been prepared on Franklin Park Police Department stationery. The statement read:

"My name is John Campell at one time I live (*sic*) at 1231 Lee Street in December of 1966 I sold my 1967 Chevy Serial No. 164877J114806 to Ernie Rizzo of Franklin Park, for $2,295.00. I purchased the car from Avis for $1,950.00 on December 12, 1966. I also purchased a burned 1967 Chevy (*sic*) from Avis Rent A Car for $400.00 which I sold the parts for a stock car. How the titles for these cars got mixed up I have no idea. I still have the title for Rizzo's automobile. (signed) John Campell."

LaGioia asked the man to sign the statement which he did. However, he erroneously spelled his name "John Campll" (*sic*). The man gave LaGioia the statement and a title to a 1967 Chevrolet bearing the serial number ending in 4806. This was the serial of the car which had been reported stolen by Avis.

Based on the testimony and the exhibits offered into evidence the Board found (1) that during the period beginning on or about Decem-

ber 16, 1966, until on or about January 11, 1968, the plaintiff had in his possession a stolen 1967 Chevrolet automobile which under the circumstances he knew or should have known had been stolen and (2) that plaintiff knowingly possessed and operated a stolen 1967 Chevrolet automobile but failed and refused to file a written report with the Franklin Park Police Department. The Board discharged and removed the plaintiff from his position as a patrolman with the Police Department of Franklin Park.

The plaintiff filed a complaint for administrative review in the Circuit Court of Cook County and after a hearing the court, on June 17, 1968, remanded the case to the Board for the purpose of taking additional newly discovered evidence.

After considering the additional evidence and exhibits the Board affirmed its findings and decision of March 13, 1968, discharging and removing the plaintiff as a police officer.

Plaintiff then filed a supplemental complaint for administrative review seeking a reversal of the Board's order. However, the trial court affirmed the Board's findings and holding. Plaintiff appeals from this order.

*Opinion*

Plaintiff contends that the decision of the Board was arbitrary and capricious and against the manifest weight of the evidence. Plaintiff argues that the evidence offered at the Board hearings was insufficient for the Board to find him guilty of the charges since there was "not one iota" of evidence that he knew that the 1967 Chevrolet was stolen. As the plaintiff states in his brief, "At the most, he was gullible in going to Avis and purchasing the burned car from Avis and turning over the title to Campell."

On administrative review the trial court's function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence. (*De Grazio v. Civil Service Commission of Chicago*, 31 Ill.2d 482, and *Senese v. Civil Service Commission of Chicago*, 88 Ill. App.2d 172.) As stated in *De Grazio* at page 489:

"In this type of proceeding involving the removal of a police officer, it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgment for that of the Commission." *Etscheid v. Police Board of Chicago*, 47 Ill.App.2d 124, 132.

In the instant case the plaintiff, a trained police officer, testified that

on or about December 5, 1966, he saw a white 1967 Chevrolet advertised at a gas station and subsequently paid $15 down to a Mr. Campell, a man he had not known before. The balance of the payment, $2,280, was to be paid in several days. Then as a favor to Campell the plaintiff bought from Avis a burned 1967 Chevrolet with serial number ending in 3850 for $375. Plaintiff sold and delivered the title to Campbell for $400, but he had no idea what Campell did with the car.

On December 21, 1966, plaintiff gave Campell the balance of $2,280 for the white 1967 Chevrolet and received a title certificate for a 1956 Chevrolet. After the sale was completed he drove to Campell's residence in Des Plaines, Illinois.

The certificate of title which plaintiff received from Campell contained the same serial number as the burned automobile plaintiff bought from Avis for Campell on December 12, 1966. It also shows that Campell purchased the car he sold to the plaintiff on the same day that plaintiff purchased the burned wreck from Avis, December 12, 1966. The certificate of title to the car which Campell sold to the plaintiff was issued to Campell on December 19, 1966. However, the plaintiff did not think it unusual that on December 5, 1966, Campbell would have possession of and would be selling a car two weeks before he received the title to it and one week before he purchased it, as shown on the title certificate. The Board was also asked to believe that plaintiff, an experienced police officer, would pay $2,280 in cash to a stranger for a 1967 Chevrolet in return for a certificate of title which showed the car to be a 1956 Chevrolet.

Defendants argue that "the only reasonable inference that can be drawn from the entire record is that John Campell is a specter created by Plaintiff." Defendants claim that it is "mysterious" how John Campell, whom plaintiff testified he had not seen or talked to since December 21, 1966, suddenly appeared at Avis on January 16, 1968, to see if it was possible to buy the title to the 1967 Chevrolet serial number ending in 4806, since it was possible he might be implicated in a case. Coincidently, this was just three days after the plaintiff was served with written charges of dismissal. Further, both Chief Zahn and Officer LaGioia testified that it was the plaintiff who called on February 8, 1968, and asked if LaGioia was still looking for Campell, and if so Campell would come in with a written statement concerning the automobile transactions. Palintiff denied having any such conversation with LaGioia. However, on February 8, 1968, the alleged Mr. Campell walked into the Franklin Park Police Station, announced that he was John Campell, handed LaGioia a prepared statement written on Franklin Park Police Department stationery but refused to give any information as to where he lived or show any

type of identification, and when La Gioia asked Campell to sign the statement the man signed "John Campll" (sic).[2]

There is evidence that the 1967 Chevrolet which plaintiff drove from December 1966 to January 11, 1968, had a fictitious serial number on the door plate, 3850, which was the serial number of the burned car plaintiff bought for Campell from Avis in December 1966. While there was no direct evidence that the plaintiff actually knew that the white 1967 Chevrolet was stolen, there was sufficient circumstantial evidence and the reasonable inference to be drawn therefrom to substantiate the finding that the plaintiff was guilty of conduct unbecoming an officer "in that during the period beginning on or about December 16, 1966 until on or about January 11, 1968, Respondent had in his possession and did so use as his personal automobile a stolen automobile, to-wit: a 1967 Chevrolet, under circumstances where he knew or should have known that said automobile had been stolen."

■ ■ A court of review will not substitute its judgment for that of an administrative agency and will not overturn administrative findings unless they are without substantial foundation in the record. (*Schwarze v. Board of Fire and Police Commissioners*, 46 Ill.App.2d 64, and *Board of Education v. County Board of School* Trustees, 32 Ill.App.2d 1.) In the instant case we are of the opinion that the order of the Board discharging the plaintiff as a policeman, which was affirmed by the trial court, was not against the manifest weight of the evidence nor was the finding arbitrary or capricious.

Plaintiff next contends that the hearings conducted by the Board were not fair, reasonable or impartial. He argues that the Board considered matters entirely extraneous from the charges against him and that the Board sustained objections which prejudiced his rights. In *Watson v. Civil Service Commission of the City of Springfield*, 28 Ill.App.2d 424, the court held that before it would reverse the decision of an administrative agency a plaintiff must show that the error complained of materially affected his rights and resulted in substantial injustice. As the court stated:

"The appellant Watson raises a number of matters as grounds for reversal. A number of these relate to procedural and technical matters in the proceedings against the appellant before the Commission. It must be recognized that the members of these administrative agencies are usually citizens without legal experience or training. The legislature recognizing this, made provision that technical errors in the

---

[2] The statement read that Campell had purchased the white Chevrolet (No. 4806) from Avis on December 12, 1966, when in fact the uncontradicted evidence shows that he purchased it on January 16, 1968.

proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him. (Ch. 110, par. 275 (2) Illinois Revised Statutes.) Our courts have likewise adopted this rule." *Schwartz v. Civil Service Commission,* 1 Ill.App.2d 522.

■■ In the instant case the extraneous evidence which the Board heard was neither necessary for determinative of the Board's decision to discharge and remove plaintiff from the police force. Furthermore, the claim made by the plaintiff that the Board sustained objections which prejudiced his rights did not cause the plaintiff substantial injustice so as to require a reversal of the Board's order.

Plaintiff also argues that the Board conducted a strictly partisan hearing in which the Board and its attorney were arrayed against him. In support of his argument plaintiff relies upon *Gigger v. Board of Fire & Police Commissioners,* 23 Ill.App.2d 433, and *Miller v. Board of Education,* 51 Ill.App.2d 20. In *Gigger, supra,* 437, the court found that the hearing before the Board was not fair and impartial since:

"The hearing before the Board of Fire and Police Commissioners was conducted entirely by the Board's attorney. He presented, interrogated and cross-examined the witnesses. He ruled on all questions of law and evidence, and he decided whether a continuance would be granted. A search of the transcript reveals that on only one occasion did a Board member ask a question. Not one ruling was made by the Board. The members of the Board remained entirely mute throughtout the hearing, and, except for the one question asked, did not participate in any way."

In the instant case the attorney for the Board merely advised the chairman as to the law and the chairman ruled on all questions of law and evidence. Further, the Board fully participated in the questioning of all witnesses.

In *Miller, supra,* it appears that the attorney for the Board acted as both prosecutor of Miller and adviser to the layman Board with reference to the admission of evidence and other procedural matters. The court concluded that Miller was prevented from having a fair trial by the multiple capacities in which the School Board and its attorney were functioning.[3]

---

[3] The court also concluded that the charges which were proved against Miller were remediable and would therefore have required a warning notice and that the Board's findings were against the manifest weight of the evidence.

In the instant case the Board was represented by its own independent attorney, who acted as its adviser, while the complainant, Chief Zahn, was represented by the attorney of his choice. It was the complainant's attorney who acted as prosecutor. He called his witnesses, examined them and introduced documents to substantiate and support the charges filed by Chief Zahn. Therefore, the case here is distinguishable from *Miller* where the attorney for the Board acted both as prosecutor and adviser.

We have reviewed the hearings which were held and we conclude that the Board and its attorney were not arrayed against the plaintiff, and that the hearings were fair and impartial.

Plaintiff requests that we take judicial notice of certain criminal proceedings arising out of his possession and use of the white Chevrolet. On March 5, 1968, defendant (plaintiff here) pleaded guilty in case No. 68 Mc 3-1200 to a charge of having "POSSESSED A MOTOR VEHICLE, 164877 TO-WIT, 1967 CHEVROLET SERIAL NO. 05114806 IN WHICH THE MANUFACTURER'S IDENTIFICATION NUMBER HAD BEEN REMOVED & SAID DEFENDANT HAD NO KNOWLEDGE OF SAID REMOVAL * * *." (Ill. Rev. Stat. 1967, ch. 95—1/2, par. 4—102(d).) He appealed and this court reversed and remanded pursuant to a confession of error by the State that defendant pursuant to a confession of error by the State that defendant (plaintiff here) had not been advised of the consequences of his plea of guilty. Thereafter, on May 5, 1969, the State *nolle prossed* this complaint after indicting defendant (plaintiff here) on April 28, 1969, for theft and having possession of a motor vehicle, to wit, a white 1967 Chevrolet (No. 4806) on which the manufacturer's identification number had been altered or removed and that this removal was *with* the knowledge of the defendant. (Ill. Rev. Stat. 1967, ch. 95½, par. 4—103(d).) On October 10, 1969, Rizzo was found not guilty of theft but was found guilty of having possessed, without knowledge, a white 1967 Chevrolet (No. 4806) with the manufacturer's number thereon removed or falsified, and was fined $200.[4]

■■ However, neither a record of conviction nor a judgment of acquittal or dismissal in a criminal case is admissible in a civil case even though based on the same conduct. (*McCottrell v. Benson,* 32 Ill.App.2d 367.) In *City of Girard v. Girard Egg Corp.,* 87 Ill.App.2d 74, the court found that a finding of not guilty on a criminal charge was not determinative of a civil case because of the difference in the quantum of proof between civil and criminal cases.

---

[4] There was no disposition of the charge of possessing with knowledge (a felony) and the finding of guilty on the charge of possessing without knowledge (a misdemeanor) was entered although defendant was not charged with this offense.

238

The judgment is affirmed. In view of this decision we need not consider the other charges filed against plaintiff.

Judgment affirmed.

STAMOS, P. J., and ENGLISH, J., concur.