**John F. GLEASON, Plaintiff-Appellant,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, Angeline P. Caruso, Ruth Love, Sol Brandzel, George Munoz, Illinois State Board of Education, and Robert W. McAllister, Defendants-Appellees.**

**No. 85–2386.**

United States Court of Appeals, Seventh Circuit.

June 2, 1986.

Michael Wood, Kilberg, Sfasciotti & Wood, Chicago, Ill., for plaintiff-appellant.

Robert A. Wolf, Bd. of Ed. Law Dept., Susan Frederick Rhodes, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiff John F. Gleason filed suit under 42 U.S.C. § 1983 against the Board of Education of the City of Chicago, the Illinois State Board of Education and Hearing Officer Robert W. McAllister. He challenges his dismissal from his position as a tenured teacher in the Chicago school system and claims that the defendants' actions deprived him of a property interest within the meaning of the due process clause of the fourteenth amendment of the Constitution of the United States and article I, section 2, of the Constitution of the State of Illinois. The district judge granted the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). We affirm.

## I

The facts in this case are not in dispute. Mr. Gleason was employed by the Chicago Board of Education (Chicago Board) in September 1960 as a high school English teacher, and he began teaching at Lane Technical High School (Lane Tech) in the fall of 1962. He continued this employment until his suspension in 1980.

In addition to teaching, Mr. Gleason was involved in the travel/tour business. In the fall of 1977, he organized and began to book a tour to Hawaii. The tour was scheduled for the spring school vacation—April 24–28, 1978. The trip, booked through Prestige Travel, cost $438 per person. Mr. Gleason was to receive a ten-percent commission. In advertising the tour, Mr. Gleason identified himself as a Lane Tech teacher with twenty-seven years experience in the travel business. The trip payments were to be made in installments beginning with an initial $100 deposit. A total of 155 individuals—all students, teachers, parents and alumni of Lane Tech—paid $438 to Mr. Gleason for the tour. Thus, Mr. Gleason collected monies in excess of $67,000. This money, less the commission, was to be turned over to Prestige Travel, the tour operator handling the trip.

Some time in early March, Mr. Gleason lent a personal friend, Thomas Quayle, $35,000, which was to be repaid in ten days.

On March 20, Mr. Gleason deposited Quayle's $35,000 check. It was not honored by the bank due to insufficient funds. Accordingly, Mr. Gleason was unable to pay Prestige in full.

On April 21, 1978, the day before the tour's departure date, Lane Tech's principal, Norman Silber, was informed by Prestige Travel that Mr. Gleason owed the agency $40,000 on the trip and, consequently, only sixty people would be able to take the trip. That day, Mr. Gleason received a telegram from Daniel Mahru, president of International Leisure Corporation, informing him that only sixty-three persons could take the trip. Later, at approximately 9:30 p.m., Mr. Mahru telephoned Mr. Gleason and told him that he would run the tour after all. Mr. Gleason thanked him and told him that he would repay the money. As of the date of the administrative hearing, Mr. Gleason had not repaid the money. R.1, Ex.A at 17. On April 23, the day after the tour departed, the story was featured in the Chicago Tribune. When school reopened on May 1, Mr. Gleason was absent. He applied for and was granted a leave of absence for the balance of the school year. In September 1978, he resumed his teaching position.

On September 28, 1978, Mr. Gleason was indicted by a Cook County Grand Jury on two counts of theft and one count of conspiracy. After the indictment was handed down, the Director of Teacher Personnel for the Chicago Board informed Mr. Gleason that no disciplinary action would be taken prior to the trial. At his October 27 arraignment, Mr. Gleason pled not guilty. Following a fall 1979 trial, Mr. Gleason was found guilty of theft. On January 11, 1980, he was sentenced to two years imprisonment. Mr. Gleason filed an appeal.

On February 29, 1980, before the criminal appeal was resolved, the Chicago Board suspended Mr. Gleason from his teaching duties and brought an action for his dismissal based on "conduct unbecoming a teacher in the Chicago public schools in that he did make unauthorized use of a sum of money belonging to others, for which conduct he has been convicted of the felony offense of theft...." Complaint, R.1 at 4. Thereafter, a hearing was held pursuant to Section 34-85 of the Illinois School Code (School Code), Ill.Ann.Stat. ch. 122, ¶ 34-85 (Smith-Hurd 1962 and Supp.1985). This hearing was presided over by defendant Robert McAllister, a professional arbitrator under contract to the Chicago Board. On November 24, 1981, following a hearing at which both the Chicago Board and Gleason presented evidence, McAllister rendered an award and opinion, R.1 Ex.A, affirming Mr. Gleason's dismissal. Specifically, Mr. McAllister decided that Mr. Gleason's "conduct failed to meet his responsibilities to the school, faculty and students. The resultant damage to this community of interest fully supported the board's basis for dismissal regardless of the criminal conviction." R.1, Ex.A at 21.

On June 30, 1982, an Illinois appellate court reversed Mr. Gleason's conviction, holding that the monies loaned to Quayle were Mr. Gleason's and that, while Prestige Travel could have sought a civil remedy, no theft had occurred. The appellate court's order became final on October 5, 1982. In November 1982, Mr. Gleason contacted the Chicago Board to request a review of his dismissal. On July 24, 1984, the Chicago Board advised Mr. Gleason that he would not be reinstated. On November 14, 1984, Mr. Gleason petitioned the Illinois State Board of Education (State Board) to reopen the administrative hearing so that newly-discovered evidence could be entered into the record. On January 4, 1985, the State Board informed Mr. Gleason's attorney that the decision of the hearing officer was final and that, according to the School Code, review was possible only in accordance with the provisions of the Administrative Review Law, Ill.Ann.Stat. ch. 122, ¶ 34-85b (Smith-Hurd 1962 and Supp.1985). The State Board informed Mr. Gleason that neither the State Board nor the hearing officer had the statutory authority to entertain post-hearing motions or petitions.

On February 28, 1985, Mr. Gleason brought suit in the district court for the Northern District of Illinois under 42 U.S.C. § 1983. Mr. Gleason claimed that he was entitled to both prospective relief (reinstatement) and retrospective relief (back pay) based on the defendants' alleged deprivation of his property interest in his tenured teaching position. Upon receipt of motions pursuant to Fed.R.Civ.P. 12(b)(6), the district court dismissed the case without opinion. This appeal followed.

## II

■ The State Board claims that it is not subject to suit in federal court. The district court, despite full briefing of the issue by the parties, did not rule on the question and, instead, dismissed the complaint for failure to state a claim upon which relief could be granted. However, it is appropriate to deal first with this threshold matter.

The eleventh amendment "prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The State Board, an Illinois state agency, is therefore absolutely immune from liability under 42 U.S.C. § 1983. *Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908; *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978).[1]

Mr. Gleason argues that *Quern* distinguishes between prospective and retrospective relief and concludes that a federal court "may enjoin state officials to conform their future conduct to the requirements of federal law...." 440 U.S. at 337, 99 S.Ct. at 1143; *see Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, *Quern* was a suit brought against an *official* not an *agency*. Here, the agency alone, not its officials, is named as a party defendant. Such a suit is barred by the eleventh amendment "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908.

## III

The final issue on this appeal is whether, with respect to the Chicago Board, the complaint stated a claim upon which relief could be granted.[2] We agree with the district court that it did not.

■ It is undisputed that, prior to his dismissal, Mr. Gleason, as a tenured teacher, had a protectible property interest in continued employment with the Chicago Board. R. 13 at 4; *see Dusanek v. Hannon*, 677 F.2d 538, 542 (7th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). It is equally clear that due process principles require that a public employee who has a protectible interest in continued employment must be afforded a meaningful opportunity to rebut dismissal charges brought by the employer. *See Schultz v. Baumgart*, 738 F.2d 231, 234 (7th Cir.1984); *Smith v. Board of Education*, 708 F.2d 258, 261 (7th Cir.1983);

1. This court has recognized that "[s]tate agencies are not 'persons' for purposes of the Civil Rights Act." *Toledo, Peoria & Western R.R. Co. v. Illinois*, 744 F.2d 1296 (7th Cir.1984) (quoting *Edelberg v. Illinois Racing Bd.*, 540 F.2d 279, 281 n. 2 (7th Cir.1976)); *see also Yarbrough v. Illinois Dep't of Mental Health*, 538 F.Supp. 414 (N.D.Ill.1982).

2. The district judge apparently based his decision on this issue which, if the State Board were amenable to suit, would be as applicable to it as it is to the Chicago Board.

The appellant also named as a defendant Hearing Officer McAllister. However, as the appellant quite properly conceded before the district court, R. 18 at 3, Mr. McAllister is immune from liability for damages. *See Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir.1984); *see generally Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978). Moreover, any disposition of the appellant's claim against the Chicago Board makes it unnecessary to deal with the possibility of injunctive relief against the hearing officer.

*see generally Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

■ Mr. Gleason does not argue that he was not afforded adequate due process at the time of his dismissal. Indeed, he has recognized that the action of the Chicago Board was taken according to the "established administrative review process designed to insure that tenured teachers are not dismissed without cause." Appellant's Br. 14; *see Rockford Education Association v. Board of Education*, 11 Ill.App.3d 78, 296 N.E.2d 100 (1973). Rather, Mr. Gleason's complaint focuses on the facts that the administrative hearing was held before the Illinois Appellate Court ruled on his case and that the Chicago Board refused to reconsider his dismissal after the reversal of his conviction. He claims, in essence, that another procedure is required by which an administrative grievance hearing could be reopened.

This claim is flawed in two respects. First Mr. Gleason's assertion that the reversal of his conviction was, in effect, new evidence warranting a rehearing is incorrect. The decision of the Illinois appellate court reversing Mr. Gleason's conviction focused not on whether Mr. Gleason's behavior was "conduct unbecoming of a teacher" but, rather, on whether the monies that he mishandled were the property of Prestige Travel. Because it found that the money "which Gleason eventually lent to Quayle never became the property of Prestige, and the State did not prove that Prestige had an interest in the money which was superior to that of Gleason," the court reversed the conviction. R. 1, Ex. B at 6. According to the court, no crime had been committed although there may have been a breach of contract by Mr. Gleason. Thus, the reversal of the conviction is not new evidence with respect to Gleason's discharge for "conduct unbecoming of a teacher." Indeed, it would have had no bearing on the outcome of the administrative proceeding. Hearing Officer McAllister expressly stated that Mr. Gleason's discharge would be upheld "regardless of the criminal conviction." R. 1, Ex. A at 21; *see*

*Rizzo v. Board of Fire and Police Commissioners*, 131 Ill.App.2d 229, 267 N.E.2d 7 (1970); *City of Girard v. Girard Egg Corp.*, 87 Ill.App.2d 74, 230 N.E.2d 294 (1967); *McCottrell v. Benson*, 32 Ill.App.2d 367, 178 N.E.2d 144 (1961). Mr. Gleason's mishandling of the money was well-known; its deleterious effect on the school community was established at the administrative hearing. R. 1, Ex. A at 20. Indeed, the hearing officer cited one newspaper article concerning the matter in which the author suggested that "[s]tudents, meanwhile, can draw the conclusion 'suffering the consequences' of one's deeds may not mean all that much—at least if you are a teacher." R. 1, Ex. A. at 19.

Secondly, following his dismissal, Mr. Gleason had an adequate remedy in the Illinois state court system. As one Illinois court has noted, "[t]he whole purpose of the tenure provisions of the School Code is to assure teachers of experience and ability a continuous service and rehiring based upon merit rather than failure to be rehired for reasons that are political, partisan, or capricious." *Herbach v. Board of Education*, 94 Ill.App.3d 889, 50 Ill.Dec. 348, 419 N.E.2d 456, 460 (1981); *see Lenard v. Board of Education*, 74 Ill.2d 260, 24 Ill. Dec. 163, 384 N.E.2d 1321 (1979). A grant of tenure does not, however, create a permanent entitlement to the position. Rather, in accordance with the provisions of the School Code, a tenured teacher may be dismissed for cause. Ill.Ann.Stat. ch. 122, ¶ 34–85. The School Code provides that, in the case of removal for cause, the teacher receive a hearing before an impartial hearing officer. *Id.* The School Code further provides that, "[t]he decision of the hearing officer is final unless reviewed as provided in Section 34–85b of this Act." *Id.* The statute does not authorize the hearing officer to reopen the case on his own motion.

Judicial review of the decision of the hearing officer is available in the circuit courts of Illinois. The Illinois Code of Civil Procedure provides that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint

and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby." Ill.Ann. Stat. ch. 110, ¶ 3–103 (Smith-Hurd 1983). The final administrative decision in this case was entered on November 24, 1981. Thus, Mr. Gleason had until approximately January 1, 1982 to file suit in the Illinois circuit court seeking review of the decision. Had he filed, the circuit court could have stayed the decision of the agency pending disposition of his criminal appeal. Ill.Ann. Stat. ch. 110, ¶ 3–111. Mr. Gleason was free on bond pending the resolution of his criminal appeal. However, he did not take advantage of his right to appeal the administrative decision of dismissal and to ask for such a stay of his dismissal. We, therefore, find that Mr. Gleason's assertion that the Illinois administrative review process did not afford him a meaningful opportunity to challenge the administrative decision is unfounded.

Because we find that the district court's dismissal of Mr. Gleason's complaint was correct, we affirm the judgment of the district court.

AFFIRMED.