(No. 49063.-

ROY AULWURM, Appellant, v. BOARD OF EDUCATION OF MURPHYSBORO COMMUNITY UNIT SCHOOL DISTRICT NO. 186, Appellee.

*Opinion filed September 20, 1977.*

Drach, Terrell and Deffenbaugh, of Springfield, for appellant.

Wolff, Jones & Lawder, of Murphysboro, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiff, Roy Aulwurm, a tenured teacher, was dismissed from his position by the board of education of Murphysboro Community Unit School District No. 186 (hereafter the Board) following a public hearing. Aulwurm

filed a complaint for administrative review in the circuit court of Jackson County (Ill. Rev. Stat. 1973, ch. 110, par. 267), and the court affirmed the Board's decision. The appellate court, with one judge dissenting, affirmed (43 Ill. App. 3d 963), and we allowed the plaintiff's petition for leave to appeal (58 Ill. 2d R. 315).

On January 16, 1975, the Board sent a "Notice of Charges and Dismissal" to the plaintiff which set forth eight claimed grounds for dismissal:

"1. Your insubordination and failure to follow instructions of your supervisors;

2. Your failure to cooperate with your supervisors;

3. Your lack of preparation for your teaching duties and assignments;

4. Your lack of care for the physical school facilities of the District;

5. Your failure to comply with stated policies of the Board of Education;

6. Your failure to perform teaching duties assigned to you;

7. Your failure to carry out tasks assigned to you by your supervisors;

8. In the opinion of the Board of Education, the best interest of the school require your dismissal."

The plaintiff moved for and was given a bill of particulars by the Board which detailed the charges. The bill set out that the plaintiff failed to submit lesson plans, attendance forms, student recognition reports and failed to conduct a student musical in the spring of 1974. In addition he was cited for failing to perform adequately his duties as an assistant football coach. He was also cited for not submitting reports dealing with voluntary duty scheduling and for submitting to and engaging in "intimate physical contact with female students while traveling in a school bus." No evidence was produced at the hearing to support these last two charges.

Evidence was introduced to prove that the plaintiff

failed to amend course syllabi as directed and that he failed to perform adequately his duties as assistant wrestling coach. Neither of these charges appeared in the list of charges sent to the plaintiff on January 16, 1975, or in the bill of particulars provided by the Board. This evidence was introduced over the plaintiff's objections.

Section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) provides:

> "If the dismissal or removal is for *** cause it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within 10 days after the service of notice as herein provided. Written notice of such charges shall be served upon the teacher ***."

The Board's failure to notify the teacher in advance that evidence concerning these two matters would be presented at the hearing precludes the Board from seeking to base a dismissal on these charges or from considering evidence on them.

Evidence introduced at the hearing shows that the Board required all teachers to prepare weekly lesson plans on forms provided by the Board which were placed in a file in the principal's office and that the plaintiff did not always comply with this regulation; he did occasionally file lesson plans when he was prodded to do so. He was advised on numerous occasions to file these plans and he began to do so on a regular basis only when he received the notice of dismissal on January 16, 1975. The evidence also shows that 8 of 51 teachers at the plaintiff's school failed to turn in lesson plans, that the failure to turn in lesson plans did not necessarily mean that the individual teacher failed to prepare them, and that the plaintiff was never told that failure to file these plans could be grounds for dismissal. Two of the plaintiff's fellow teachers testified that they did not submit lesson plans from September of 1974 until mid-December of 1974 and that they began to do so when

the principal, Timothy Bowers, ordered them to prepare and file them. Both testified that they do not use the lesson plans that are placed in the file in the principal's office because the plans are not suitable for day-to-day use.

Mr. Theodore Schoberg, who was employed by the Board to evaluate the performance of teachers, testified that he had sat in on the plaintiff's classes a number of times and that he felt that the plaintiff's failure to prepare lesson plans made "for a very ordinary or substandard performance." On cross-examination he stated he did not know whether the plaintiff had prepared lesson plans and had simply not filed them. He said, too, that the plaintiff did show him some papers and said that they were lesson plans, but the witness felt these had just been hurriedly "cooked up." He did acknowledge that he did not know when these materials were prepared and that, on at least two different occasions when the witness sat in on the plaintiff's classes, the plaintiff did show him materials that the plaintiff said were lesson plans.

Eugene Sims, the assistant principal, testified that he evaluated the plaintiff's classroom performance prior to the time the charges were brought. He noted on his evaluation report that no plans had been filed for that particular week. He said that the plaintiff had notes that he referred to when conducting classes and that there was no relationship between the plaintiff's lack of lesson plans and his classroom performance. He rated the plaintiff's classroom performance as either good or average in every teaching category evaluated.

For the school term commencing in September of 1974 the Board adopted a new attendance policy which required a teacher to fill out a form when a student was absent for the third time in a quarter. The form was to be given to the assistant principal and then would be mailed to the student's parents. This procedure was repeated

when the student missed his fifth and seventh time; a student who was absent seven times from a class in one quarter was automatically failed. The evidence shows that the plaintiff was informed of this policy at faculty meetings and that he did not file these forms until late November when the assistant principal asked him to comply with the policy. The evidence shows, however, that the plaintiff did report his absentees daily to the school officials.

As to the plaintiff's failure to submit the names of students for recognition awards, the evidence shows that each teacher was given a form which he or she could use to nominate a student for a recognition award and that the awards were given primarily to seniors. There were eight occasions in a three-year period when the plaintiff could have submitted nominations, but he did so only once. The plaintiff testified that he joined the faculty at the beginning of the 1972-73 school year and that in his three years at the school he taught classes composed primarily of freshmen. He said he did not submit nominations because he did not feel qualified to make nominations. Pamela North, a fellow teacher, testified that during the preceding three years she taught only freshmen and sophomores and that she did not participate in the nomination process during this time because she did not know any of the seniors. The principal, Timothy Bowers, admitted on cross-examination that if a teacher did not feel he could propose a student for an award he could simply return the form in blank.

In September of 1973 the plaintiff was assigned to direct the school play which was scheduled to be performed in May of 1974. The plaintiff, the choral director, the band director and the principal served as a committee to select an appropriate play. A meeting was held in December of 1973 at which time it was decided that the play would be a musical and that the plaintiff should order

perusal materials on four musicals for the committee to examine. The committee met in late January and *Finian's Rainbow* was selected as the play to be presented. The plaintiff testified that he knew nothing about music and that the band director had told him the school band could perform the musical score for the play.

The plaintiff ordered the script and the music from a firm in New York City and on March 22, 1974, he phoned the firm because he had not received the materials. He was told that his order had never been received and also that a band would need stringed instruments to perform the score in *Finian's Rainbow.* The plaintiff then spoke with the band director, who informed him that none of the members of the school band could play stringed instruments and that it would be impossible for him to secure musicians capable of playing these instruments. The plaintiff then called the New York firm and told it not to ship the materials. He obtained a book of one-act plays from the school library and prepared to produce four one-act plays. Casting was held and rehearsal was begun, but in late April the principal informed the plaintiff that he would not allow the plays to be performed because he did not consider the material suitable. There was not enough time to prepare another production and no play was presented that year.

The plaintiff was charged with refusing to obey a direct order of a superior, David Clifton. During the 1972 and 1973 football seasons the plaintiff had shared coaching duties with David Clifton. The plaintiff directed the offense and Clifton handled the defense for the junior varsity team for the 1973 season. Richard Veach, the head football coach, said that, at the beginning of the 1974 season, he appointed Clifton the head junior varsity coach and that he informed the plaintiff of this change. On cross-examination Veach admitted that he did not inform Mr. Dennis Harmon, the school's athletic director, that

Clifton had been appointed as head coach of the junior varsity. In the next to the last game of the 1974 season, Clifton, at half time, ordered the plaintiff to replace the quarterback and the plaintiff refused on the ground that the substitute had not practiced with the team during the week and was not familiar with the new plays installed in the offense. The plaintiff testified that he was not told that Clifton had been designated as head coach of the junior varsity and that during the 1974 season he operated under the assumption that he was still in charge of the offense.

Also to demonstrate the plaintiff's deficiencies as a coach, evidence was introduced which showed that the plaintiff was not present when the football equipment was distributed or collected during the 1974 season. However, the evidence shows that the equipment was distributed in August of 1974, four or five days prior to the beginning of football practice and two weeks prior to the opening of classes. It shows that the plaintiff was in Arizona on vacation at this time, that the head football coach, Richard Veach, was aware of this, and that the plaintiff returned in time for the first practice. The record shows, too, that on the day the equipment was collected the plaintiff was given permission by the principal to take a personal leave day to go to St. Louis to pick up his car that had been repaired and that Coach Veach knew that the plaintiff was not in school on the day the equipment was collected.

There was an attempt to show that the plaintiff was late for most Saturday morning junior varsity practices. However, on cross-examination the witness who had testified to support this claim admitted that he could remember only one occasion when the plaintiff had been tardy.

Another complaint regarding the plaintiff's performance as a football coach was that he missed the first half of a junior varsity game. The evidence shows that the game

was scheduled on a holiday and that the plaintiff, with Clifton's knowledge, went to St. Louis to check on his auto that was being repaired. Returning from St. Louis the plaintiff encountered a severe rain storm which delayed traffic and caused him to be late for the game.

On appeal here the plaintiff makes two contentions: (1) all of the charges against him were remediable and the Board was required by section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) to give him "reasonable warning in writing" that if the causes were not removed, he would be dismissed; and (2) the Board's decision that he should be dismissed was contrary to the manifest weight of the evidence.

Irremediable deficiencies in a teacher's performance were discussed recently in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143. We observed:

"The board's findings are not, of course, immune from judicial review. The court function, however, is limited, and does not permit substitution of the court's judgment for that of the board. Rather, the board's findings must be sustained unless those findings are contrary to the manifest weight of the evidence. [Citations.] The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her. [Citations.] Uncorrected causes for dismissal which originally were remediable in nature can become irremediable if continued over a long period of time. [Citations.]" 67 Ill. 2d 143, 153.

We conclude from the record that the Board erred in dismissing the plaintiff. Section 24—12 of the School Code provides: "Before service of notice of charges on account of causes that are considered remediable, the teacher shall

be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." It has been observed that the giving of notice of remediable causes is jurisdictional and that the failure of a school board to give such a warning, when called for, prevents it from acquiring jurisdiction to discharge a teacher for these causes. (*Paprocki v. Board of Education* (1975), 31 Ill. App. 3d 112; *Everett v. Board of Education* (1974), 22 Ill. App. 3d 594.) Under the criteria set forth in *Gilliland,* we judge that, under the circumstances shown by the record, whatever deficiencies were in the plaintiff's failing to submit lesson plans, attendance forms, and student recognition reports, to conduct a student musical and to perform adequately his football-coaching duties were remediable. It is conceded here that no reasonable warning in writing was given to the plaintiff notifying him that if the stated causes were not removed or corrected charges might be brought against him. As a consequence, the Board was without jurisdiction to discharge him for these causes.

For the reasons given the judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*