LARRY PENMAN, Plaintiff-Appellant, *v.* THE BOARD OF TRUSTEES OF ILLINOIS EASTERN COMMUNITY COLLEGES *et al.*, Defendants-Appellees.

Fifth District    No. 79-625

Opinion filed March 3, 1981.

H. Carroll Bailey, of Louisville, for appellant.

Laurence L. Arnold, of Olney, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Larry Penman, brought this action in *mandamus* to compel defendant, Board of Trustees of Illinois Eastern Community College District No. 529, to assign him to his former position as librarian for Olney Central College. The Circuit Court of Jasper County entered judgment for the Board of Trustees, finding that plaintiff was not a tenured employee.

This case involves the tenure provisions of the Public Community College Act (Ill. Rev. Stat. 1979, ch. 122, par. 101—1 *et seq.* (hereinafter the Act)) and a series of contracts between plaintiff and defendant.

Plaintiff executed his first contract with Olney Community College

(later renamed Olney Central College) on May 16, 1966. The contract was a probationary teacher's contract for an eleven month term beginning August 22, 1966. Penman's salary was fixed at $8,433. A second probationary contract was executed on March 7, 1967, to begin July 1, 1967, and to run for 11 months with an annual salary of $8,617. At the time these contracts were executed, Olney Community College was a Class II junior college.

On May 21, 1968, prior to execution of a third contract, defendant adopted a resolution to remove Penman from the faculty salary schedule and make his position as librarian and instructor in library science an administrative appointment, the appointment to be made annually by the board. Certain changes were made in plaintiff's responsibilities; plaintiff was employed for the full year, he assumed control over textbook rentals, his work was longer, his salary increased significantly, his salary was not determined by any fixed pay scale, and his salary did not increase at a uniform rate.

Penman's third contract was executed with the board of Junior College District No. 529, Olney Community College having been incorporated into a Class I junior college district by referendum late in 1967. The third contract was in form a probationary teacher's contract, but under salary information the phrase "adm. appointment" appeared. The contract was executed by Penman on May 28, 1968. The term of the contract was for 12 months at a salary of $13,000.

The fourth contract executed by plaintiff was an administrative contract for 12 months at a salary of $14,250. Plaintiff executed this contract on March 19, 1969. However, plaintiff complained late in 1969 to Dr. James Spencer, Chancellor of Olney Central College, that he was entitled to a tenure contract. Dr. Spencer was hired in July of 1968 and was unaware, according to this testimony, of Penman's prior administrative appointment. Spencer issued a faculty tenure contract to Penman, but the contract was never formally approved by the board of trustees.

The next six contracts executed by plaintiff were all administrative contracts, and no request was made for tenure contracts. All of the administrative contracts executed by plaintiff incorporated the board's rules and regulations.

The School Code of 1961 (Ill. Rev. Stat. 1961, ch. 122, par. 1—1 *et seq.*) provided for the creation of junior colleges as part of the public common school system. (Ill. Rev. Stat. 1961, ch. 122, par. 13—12.) The Public Community College Act was subsequently adopted; it provided for separate junior college districts. (Ill. Rev. Stat. 1965, ch. 122, par. 104—1), classified as either Class I or Class II. Olney Community College was a Class II junior college during the first two years of Penman's employment with defendant. The tenure rules applicable to Olney

College at that time were those applicable to the public common schools and are set out in section 24—11 of the School Code then in effect. (Ill. Rev. Stat. 1965, ch. 122, par. 24—11.) That section provides in part:

" * * *

> Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period. If, however, a teacher has not had 1 school term of full-time teaching experience prior to the beginning of such probationary period, the employing board may at its option extend such probationary period for 1 additional school term by giving the teacher written notice by registered mail at least 60 days days [*sic*] before the end of the second school term of the period of 2 consecutive school terms referred to above."

Olney Community College was in transition from a Class II junior college to a Class I junior college between December of 1967 and July of 1968. A referendum establishing the Class I college had passed, and a board of trustees had been organized prior to the conclusion of the 1967-1968 school term of the Class II college. During this period when Penman was concluding his second year of employment under a probationary contract, the board of trustees of the newly organized Class I junior college changed Penman's position to an administrative appointment and Penman executed his third contract. The legislature amended the Act in 1967 to provide a tenure policy for junior colleges changing from a Class II to a Class I district. This amendment allowed Class I junior colleges to establish tenure policies (Ill. Rev. Stat. 1967, ch. 122, par. 103—32) different from that statutorily fixed by section 24—11 of the School Code (Ill. Rev. Stat. 1967, ch. 122, par. 24—11). Olney Community College was governed by section 3—32 of the Act as amended in 1967. That section empowered the board of Class I colleges:

> "To establish tenure policies for the employment of teachers and *administrative personnel*, and the cause for removal.
>
> If the territory of a district which operates a Class II junior college is included in the territory of a Class I junior college district, any full time teacher, or administrator, who has been assigned at least ½ of his contractual duties in the Class II junior college shall be considered a full-time junior college teacher, or administrator, for contractual continued service purposes in the Class I junior college at the beginning of its first year of operation, if he had attained contractual continued service with the district which operated the Class II junior college at the conclusion

of the year immediately preceding the operation of the Class I junior college and accepts employment by the Class I junior college district for its first year of operation." (Emphasis added.) Ill. Rev. Stat. 1967, ch. 122, par. 103—32.

The issue in this case is whether defendant had the power under the first paragraph of section 3—32 to appoint Penman annually or whether Penman became tenured by operation of law under the second paragraph of section 3—32 of the Act. If defendant could appoint plaintiff annually, then it could also discharge plaintiff at the end of any year. However, if plaintiff was tenured, then under defendant's own rules plaintiff could only be discharged for specified reasons, and he would be entitled to a notice and hearing before being discharged. We note that plaintiff was provided with a bill of particulars and a hearing prior to his discharge, but defendant does not claim that these procedures were sufficient to discharge a tenured faculty member.

Penman argues that he completed two years under probationary teaching contracts qualifying him for contractual continued service under section 24—11 of the School Code. He maintains that he was assigned at least one-half of the same contractual duties which he previously performed when Olney Community College became a Class I junior college. Plaintiff concludes he was tenured and was entitled to the procedural rights due tenured employees in discharge proceedings and that the failure to accord him the rights of a tenured employee requires his reinstatement.

Defendant argues that plaintiff was not tenured because plaintiff was an administrator. Defendant also contends that even if plaintiff was tenured at one time, plaintiff gave up his tenure rights by subsequently executing administrative contracts.

In analyzing the problem, it is apparent that the critical time is the transition period in 1968. It was during this period that Penman either did or did not obtain tenure. After carefully reviewing the record, we are of the opinion Penman did not obtain tenure and that the decision of the trial court was correct.

■■ In assessing Penman's claim that he was tenured, we note that section 24—11 of the School Code and section 3—32 of the Act create a liability where none would otherwise exist. Therefore, any claim under the tenure law must be clearly evident. *Strejcek v. Board of Education* (1979), 78 Ill. App. 3d 400, 397 N.E.2d 448.

Section 3—32 of the Act empowers the board of a Class I junior college to establish tenure policies for both teachers and administrative personnel. (Ill. Rev. Stat. 1967, ch. 122, par. 103—32.) The second paragraph of section 3—32 attempts to explicate the status of Class II teachers and administrators that are hired by the Class I board.

■■ Where a statute's meaning is clear we are required to apply the statute without resorting to judicial interpretation. However, where a statute is unclear or susceptible of more than one meaning we must interpret the statute to clarify its application.

In reading the second paragraph of section 3—32 we note that it is unclear in at least two respects. First, it is unclear what duties a teacher or administrator must be assigned in order to qualify for protection under the second paragraph. The way in which section 3—32 is written makes it appear that a teacher must be assigned duties in the Class II junior college while the Class I junior college begins operations. Obviously, this is not possible because the Class II junior college would have ceased existing when the Class I junior college commenced operation. This anomaly can be avoided by reading section 3—32 as saying "* * * any full time teacher, or administrator, who has been assigned at least 1/2 of his [former] contractual duties in the Class II junior college * * *." By adding the word "former" we clarify the fact that the Class II junior college is no longer operating and the duties performed at the Class II junior college are used only for the purpose of determining whether a teacher has been assigned one-half of the same contractual duties in the Class I junior college.

In comparing Penman's contractual duties at the Class II junior college with his contractual duties at the Class I junior college, we do not believe that he established the fact that he was assigned one-half of his former contractual duties. By using the different phrases, teachers and administrative personnel, the legislature was making a distinction between the positions of teacher and administrator. It is clear from the record that Penman's position changed from teacher to that of administrator. Therefore, he was not reemployed by the Class I board in the same capacity as he had previously been employed; that is, he had not been a full-time teacher who was assigned one-half of his former contractual duties as a teacher. Penman had no former contractual duties as an administrator, and so the new board was free to establish its tenure policy for Penman in his new administrative capacity under the first paragraph of section 3—32 of the Act. This is what the board of trustees did when it passed a resolution to make Penman's position an annual appointment. The decision of the board of trustees was within its broad grant of authority. *Steinmetz v. Board of Trustees* (1978), 68 Ill. App. 3d 83, 385 N.E.2d 745.

■ The second difficulty that we perceive in section 3—32 of the Act is plaintiff's assumption that it grants tenure by operation of law. Penman assumes that any teacher who gained tenure in a Class II junior college and was assigned one-half of his former contractual duties becomes tenured as a matter of law in the Class I junior college. We disagree.

Assuming, arguendo, that Penman was tenured while teaching at the Class II junior college, and assuming further that he was assigned at least one-half of his former contractual duties as a teacher at the Class I junior college, we believe that the only right Penman gained was to be classified as a full-time junior college teacher or administrator. However, being classified as a full-time teacher or administrator, according to section 3—32, only qualifies the individual as a teacher or administrator for tenure consideration under whatever policy the board may establish; it does not grant tenure.

■ Illinois law clearly establishes that only a full-time teacher may qualify for contractual continued service. (*Edwards v. Board of Education* (1980), 84 Ill. App. 3d 374, 376, 405 N.E.2d 478, 480.) However, being a full-time teacher or administrator is just one condition necessary to gain tenure. Under the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—11) a full-time teacher must teach at least two full school terms before being tenured. Under the first paragraph of section 3—32 of the Act, the board of trustees may set its own terms for tenure. Olney Community College established a four-year probationary period for full-time teachers before obtaining tenure and an annual appointment policy for full-time administrative personnel with no possibility for tenure. Thus, the only right granted Penman under the second paragraph of section 3—32 was to be classified as a full-time teacher or administrator. This reading of the second paragraph of section 3—32 is required if the first paragraph, granting the board power to establish tenure policies for both teachers and administrative personnel, may be given meaning. Such a construction lends logical consistency to both paragraphs of the statute.

It is also conceivable that Penman's claim under section 3—32 of the Act is completely misplaced because the section has been amended to omit the second paragraph and all references to contractual continued service on which Penman relies. (Ill. Rev. Stat. 1979, ch. 122, par. 103—32.) Under section 24—15 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—15) the legislature may amend or repeal any statutory contract rights established in section 24—11 of the School Code. Thus, the deletion of the second paragraph of section 3—32 of the Act may be interpreted as repealing all statutory tenure rights that Penman might otherwise have obtained and vesting absolute discretion in the board of trustees.

All of Penman's annual contracts incorporated the board's rules and regulations. Thus, all of his contracts incorporated the annual appointment policy for administrative personnel. Inasmuch as the board had the authority to fix the duration of employment for administrative personnel, the board was not required to follow the procedures to discharge a

tenured teacher. Penman was not tenured and could be discharged without a formal hearing. *Miller v. School District No. 167* (7th Cir. 1974), 500 F.2d 711.

Penman claims that he was led to believe that he had some relative degree of permanency because of Spencer's actions in issuing a tenure contract. Reliance is placed on *Soni v. Board of Trustees* (6th Cir. 1975), 513 F.2d 347. In *Soni* the court found that officials at the University of Tennessee had led plaintiff to believe that he had a relative degree of permanency on the University faculty and that he had acquired a property interest which could not be summarily terminated. However, the facts in *Soni* are readily distinguishable from those presented here.

Professor Soni had been formally recommended for a tenured position, and the department faculty acted on the recommendation. After the faculty meeting Soni was assured that the recommendation for his tenure had been acted on favorably. Also, Soni was allowed to participate in the retirement system that was restricted to permanent personnel. Soni was allowed to attend departmental meetings and voted on tenure for other teachers; he continued to receive verbal assurances as to the permanency of his status.

In contrast with *Soni*, the facts supporting Penman's claim are much weaker. Penman was never placed on the tenured faculty pay scale, the board of trustees explicitly made Penman's position subject to annual appointments, the single tenure contract issued to Penman was the result of a mistake and was never formally approved by the board of trustees. Penman could not have had an expectation of a relative degree of permanency based on these facts.

Penman further claims that he was a teacher at all times and was not an administrator. The record indicates the contrary. There was a significant change in the contractual relationship between Penman and the board of trustees, noted previously, which indicated he had assumed an administrative position. (*Lane v. Board of Education* (1976), 38 Ill. App. 3d 742, 348 N.E.2d 470.) These differences demonstrate Penman's change of position was real and not a mere subterfuge. Thus, the fact that Penman may have taught a class in use of the library did not necessarily transform his administrative position from one of administrator to that of teacher. Where Penman's teaching duties were only a minor part of his total responsibilities, at most four hours out of a work week ranging between 40 and 50 hours, all of the evidence indicated that he was performing administrative duties and thus subject to defendant's policy of annual appointments for administrative personnel.

Plaintiff also argues that defendant should be estopped from denying Penman's status as a teacher because of benefits that defendant received

as a result of Penman's teaching. We find this argument to be without merit. Defendant has never denied that Penman taught a course in library usage and that it received compensation from the State for the hours taught by plaintiff. What defendant has contended is that administrators are required to do some teaching incidental to their administrative duties. We do not find defendant's position to be inequitable, and it does not require a reversal of the lower court.

Even if Penman were tenured, we believe that Penman abandoned his tenured status. Plaintiff testified that he was aware of the difference between administrative and teaching positions. All of his contracts, starting with the one executed on May 28, 1968, put Penman on notice that he was contracting for an administrative position. Penman received mailings from the board of trustees which classified his position as administrative and he was aware that he was receiving salary increases above the salaries given to tenured faculty members. Penman only requested a tenure contract once, then subsequently signed six administrative contracts. All of these factors were sufficient to put Penman on notice that his former position with the Class II junior college had been terminated and replaced by an administrative appointment. (*Glover v. Board of Education* (1975), 62 Ill. 2d 122, 340 N.E.2d 4.) Inasmuch as Penman's continuing acceptance of his administrative position was inconsistent with a claim that he was a tenured faculty member, Penman abandoned any claim he may have had to continued contractual service status. *Burris v. School Board District No. 189* (1979), 70 Ill. App. 3d 572, 388 N.E.2d 873.

After reviewing the evidence we cannot say that the trial court's judgment was against the manifest weight of the evidence or contrary to law. For this reason, the judgment of the Circuit Court of Jasper County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.