Warren G. SMITH and John Gremer,
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF URBANA SCHOOL DISTRICT NO. 116 OF CHAMPAIGN COUNTY, ILLINOIS, et al., Defendants-Appellees.

No. 81–2877.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1982.

Decided May 13, 1983.

Jeffrey D. Frederick, Johnson, Frank & Frederick, Urbana, Ill., for plaintiffs-appellants.

Joseph W. Phebus, Phebus, Tummelson, Bryan & Know, Urbana, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and HOFFMAN, Senior District Judge.*

CUMMINGS, Chief Judge.

Plaintiffs Warren Smith and John Gremer are physical education teachers in a public high school in Illinois. Each was also formerly the head coach of one of the school's athletic teams. Smith was head coach of the school's football team for 26 consecutive years; Gremer was head coach of the school's baseball team for 3 consecutive years. In the summer of 1979, the board of education for the state school district in which the high school is situated ("the school board") notified each that it would continue to employ him as a physical education teacher for the following school year but that it would not reemploy him as an athletic coach. In addition, several members of the school board made public their opinion that a change in coaches would be good for the school's athletic program. Plaintiffs kept their teaching jobs and demanded that they be reinstated to their former coaching positions. The school board refused and some two years later plaintiffs commenced this suit for reinstatement and damages in federal district court under 42 U.S.C. § 1983 against the school board, its members, and the superintendent of the surrounding school district.

Plaintiffs' amended complaint consists of 24 Counts containing federal and pendent state claims. Only six Counts are before us on appeal. Plaintiffs' first federal claim (Smith Count I and Gremer Count VII) is that the Fourteenth Amendment required the school board to conduct a hearing before it replaced them as coaches because an Illinois statute gave them tenure in their coaching positions. Presumably the purpose of such a hearing would have been to provide plaintiffs an opportunity to show that the school board had no good reason to replace them. Plaintiffs' second federal claim (Smith Count XXI and Gremer Count XXIII) is that even if they did not enjoy statutory tenure as coaches, they had at least "a reasonable expectation of re-employment," *de facto* tenure, entitling them to such a hearing before discontinuing their employment. Plaintiffs' final appealed claim (Smith Count XXII and Gremer Count XXIV) is that the Fourteenth Amendment prohibited members of the school board from telling the public that a change in coaches would help the school's athletic program without first conducting a hearing. Presumably the purpose of this hearing would have been to provide plaintiffs an opportunity to prove that they were good coaches and that replacing them would not improve the school's athletic program.

* The Honorable Walter E. Hoffman, Senior District Judge for the Eastern District of Virginia, is sitting by designation.

Defendants responded to plaintiffs' complaint by filing a Federal Civil Procedure Rule 12(b)(6) motion to dismiss for failure to state a claim for relief. Without comment, except for a reference to defendants' supporting memoranda, the district court granted defendants' motion and plaintiffs have appealed as to the six Counts noted. For the reasons that follow, we affirm.

## I. Plaintiffs Had No Statutory Tenure in Their Coaching Positions .

■■■ The Fourteenth Amendment due process clause does not guarantee a football or baseball coach a job at a public high school even if his teams always win and his players idolize him. The ultimate decision who is the best man to coach a state high school athletic team rests with state school officials, not with the federal courts. *Bishop v. Wood*, 426 U.S. 341, 344, 349–350 n. 14, 96 S.Ct. 2074, 2077, 2079–2080 n. 14, 48 L.Ed.2d 684; *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Perry v. Sinderman*, 408 U.S. 593, 602 n. 7, 92 S.Ct. 2694, 2700 n. 7, 33 L.Ed.2d 570; *id.* at 603–604, 92 S.Ct. at 2700 (Burger, C.J., concurring). At most, the Fourteenth Amendment due process clause guarantees a state athletic coach the right to know why he is being dismissed and to convince school officials before they dismiss him that they are making a mistake, that their reasons for dismissing him are either not supported by facts or less compelling than they think.

■■■ Not every state employee enjoys those rights. The Fourteenth Amendment prohibits the deprivation, without due process of law, of a person's "life, liberty, or property"; not every state employee who is dismissed from employment is thereby deprived of his "life, liberty, or property." Liberty is freedom from too much government, not financial well-being. A state government that dismisses one of its employees does not, without more, deprive him of his liberty. *Board of Regents v. Roth*, 408 U.S. 564, 572–574, 92 S.Ct. 2701, 2706–2707, 33 L.Ed.2d 548. Nor does it deprive him of his "property" unless the state earlier conferred upon him a right of continued

employment by telling him, in a manner that made it reasonable for the employee to expect the state to stand behind its word, that it would continue to employ him. *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570; cf. *Hewitt v. Helms*, —— U.S. ——, ——, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) ("But on balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest" in remaining in a general prison population rather than in administrative segregation). Thus unless plaintiffs had some right under Illinois law to keep their coaching jobs—unless the State, through its legislature or through the school board, told them, conditionally or unconditionally, that it would retain them as coaches and unless it was reasonable for them to expect the school board to retain them as coaches—plaintiffs had no right under the Fourteenth Amendment to any sort of hearing prior to their dismissal as coaches.

■■■ Plaintiffs allege in Counts I and VII of their complaint that the Illinois School Code, Ill.Rev.Stat. ch. 122, art. 24 (1981), gives them a right of property in their coaching positions. Section 24–11 of that Code, Ill.Rev.Stat. ch. 122, ¶ 24–11 (1981), confers job tenure—the right to continue working until age 70 under an existing employment contract—upon any "teacher" employed full time for three consecutive years in an Illinois school district. The section defines "teacher" as any "school district employee[ ] regularly required to be certified under laws relating to the certification of teachers."

Coaches do not fit within this definition. There is no Illinois law requiring that high school football and baseball coaches be certified as possessing certain minimum qualifications. In fact, Section 10–22.34a of the Illinois School Code—entitled "Supervision of non-academic activities"—expressly empowers school boards "[t]o designate non-certificated persons of good character to serve as supervisors, chaperones or spon-

sors, either on a voluntary or on a compensated basis, for school activities not connected with the academic program of the schools." The baseball and football teams are not "connected with" the academic program at plaintiffs' high school. The State Board of Education does not require that Illinois public high schools offer their students courses in how to play football and baseball (see State Board of Education, Document # 1: The Illinois Program for Evaluation, Supervision, and Recognition of Schools, § 4–4 (1977)), and the exhibits attached to the complaint indicate that the football and baseball teams are not part of the curriculum at plaintiffs' high school. Students enrolled in courses that are part of the school's curriculum play on the football and baseball teams, and the teams may practice and play their games on school grounds, but that is not enough to make the school's athletic program "connected with" the school's academic program. An Illinois appellate court has held that school districts may employ non-teachers to supervise lunch periods in school cafeterias. *Ambroggio v. Board of Education,* 101 Ill.App.3d 187, 56 Ill.Dec. 622, 427 N.E.2d 1027 (2d Dist.1981). And the State Board of Education has construed the phrase "not connected with" to mean "*not directly connected* with" (Illinois State Board of Education, Rules & Regulations to Govern the Certification of Teachers, Rule 13.02 (1980) (emphasis in original)) and gives as an example of an activity not connected with a school's academic program the use of "[p]laygrounds, during free play and not during part of an organized physical education period." Plaintiffs do not allege that students in their physical education classes were required to play on the baseball and football teams. Had it wanted, the school board could have hired to supervise the conduct of students attending school baseball and football games persons not certified to teach any of the courses of study comprising its academic program. *District 300 Education Association v. Board of Education,* 31 Ill.App.3d 550, 334 N.E.2d

165 (2d Dist.1975). If it can hire non-certified persons to supervise students watching an athletic contest, it can hire non-certified persons to coach students participating in an athletic contest. There is no evidence that the Illinois legislature was concerned more that students learn how to swing a baseball bat and throw a football than that they learn to behave civilly at public functions.

■ But the school board hired plaintiffs and plaintiffs are certified to teach physical education. Therefore plaintiffs qualify as "teachers," as defined in Section 24–11 of the School Code, and they enjoyed tenure as teachers under that Section at the time the school board replaced them as coaches. Accordingly plaintiffs argue that although they would not enjoy tenure as coaches if they had not also been hired as teachers, they enjoy tenure as coaches because the school board hired them as teachers. But Illinois courts have thrice rejected this argument. *School Directors of District U–46 v. Kossoff,* 95 Ill.App.3d 26, 50 Ill.Dec. 550, 419 N.E.2d 658 (2d Dist.1981); *Caviness v. Board of Education,* 59 Ill.App.3d 28, 31 n. 1, 16 Ill.Dec. 526, 375 N.E.2d 157 (4th Dist.1978); *Betebenner v. Board of Education,* 336 Ill.App. 448, 84 N.E.2d 569 (4th Dist.1949).[1] These cases of course are controlling since state law determines whether one has a property right under the due process clause. *Roth, supra,* 408 U.S. at 577–578, 92 S.Ct. at 2709. The Illinois Tenure Act was intended to bolster the quality of academic programs in Illinois schools by ensuring that qualified teachers with several years' teaching experience are not replaced for arbitrary, political, or partisan reasons. *Lenard v. Board of Education,* 74 Ill.2d 260, 268, 24 Ill.Dec. 163, 384 N.E.2d 1321 (1979); *Herbach v. Board of Education,* 94 Ill.App.3d 889, 893, 50 Ill.Dec. 348, 419 N.E.2d 456 (1st Dist.1981). The Act was certainly not intended to improve the caliber of play on Illinois football fields and baseball diamonds. Since Counts I and VII

1. *Aulwurm v. Board of Education,* 67 Ill.2d 434, 10 Ill.Dec. 571, 367 N.E.2d 1337 (1977) does not help plaintiffs, for the issue whether the Illinois School Code confers coaching tenure upon tenured teachers who also coach was not before the Illinois Supreme Court in that case.

are based on plaintiffs' having tenure as coaches and Illinois law is to the contrary, the district court properly dismissed those Counts.

## II. Plaintiffs Had No *De Facto* Tenure As Coaches

Plaintiffs allege in Counts XXI and XXII of their complaint another right of property in their coaching positions. They assert that when the school board first hired them as head coaches, it agreed to retain them as head coaches every school year thereafter until "just cause existed" for the school board to replace them, thus giving them *de facto* tenure. A panel of this Circuit recently held that a person under contract to coach football at a state high school has a constitutionally protected property interest in his job. *Vail v. Board of Education,* 706 F.2d 1435 (7th Cir.1983). But the contracts before us show that Smith and Gremer were not under coaching contracts when the school board replaced them and therefore had no *de facto* tenure.

▮ Attached as exhibits to plaintiffs' complaint are copies of their written employment contracts with the school board. Those contracts did not guarantee them employment as coaches for an indefinite period of time. The first year the school board hired plaintiffs, plaintiffs each signed a written contract of employment. Smith's contract, in which the school board agreed to pay him one salary for teaching and an additional salary for coaching football, expressly provides that Smith is to be employed "for the fiscal year 1953–54 * * * in accordance with the provisions of the Illinois Tenure Law, Article 24 of [the] School Code of Illinois." As discussed above, those statutory provisions do not confer tenure in non-teaching positions upon school employees. Gremer's contract, in which the school board also agreed to pay him one salary for teaching and an additional salary for serving as an assistant coach,[2] expressly pro-

vides that "[i]t is understood that the terms of employment as stated in this letter are for the school year 1960–1961 only." Every school year since plaintiffs were first hired, the school board has renewed their contracts of employment either by executing a new one-year contract of employment or by sending them written memoranda listing their salaries and non-teaching positions for the next school year.[3] Thus it cannot be said that their written contracts gave plaintiffs tenure as coaches.

▮ It is possible to read plaintiffs' amended complaint as alleging an oral contract by the school board to employ them indefinitely as coaches, but Illinois courts are distrustful of a claim by an employee that his employer orally contracted to pay him wages for an indefinite period of time. Illinois courts will enforce an oral promise to employ a person for life or some other equally indefinite length of time only if the employee makes in return some sacrifice— *i.e.,* relinquishes another job and spends a considerable amount to relocate himself and his family—that he probably would not have made absent a guarantee of continued permanent employment. *Titchener v. Avery Coonley School,* 39 Ill.App.3d 871, 875, 350 N.E.2d 502 (2d Dist.1976); *Heuvelman v. Triplett Electrical Instrument Co.,* 23 Ill.App.2d 231, 235, 161 N.E.2d 875 (1st Dist.1959); *Goodman v. Motor Products Corp.,* 9 Ill.App.2d 57, 77–78, 132 N.E.2d 356 (2d Dist.1956). Plaintiffs do not allege that they made any such sacrifice in reliance upon the school board's alleged promise to employ them indefinitely. Plaintiffs allege only that in exchange for the school board's promise to reemploy them every school year they promised to coach. Under Illinois law an oral promise of permanent employment given in exchange for a promise to work is unenforceable. *Heuvelman, supra.* Perhaps plaintiffs forewent other coaching positions at other schools by remaining so long at one school, but that is not sufficient to entitle them to relief against the school

---

2. Gremer was promoted to head baseball coach fifteen years later.

3. Once plaintiffs became tenured as teachers under the Illinois School Code there was no need for the school board to rehire them as teachers at the beginning of each school year.

board. *Id.* 23 Ill.App.2d at 236, 161 N.E.2d 875 ("It is not sufficient consideration for a contract of permanent employment to forego another employment opportunity."). Every person who accepts an offer of employment foregoes the possibility of working elsewhere.[4]

The school board might also have acted in some way from which it could be inferred that it agreed to employ plaintiffs indefinitely as coaches, but to proceed in federal court upon a suit based upon such an agreement, plaintiffs must allege facts from which the agreement can be inferred. *Foley-Carter Ins. Co. v. Commonwealth Life Ins. Co.,* 128 F.2d 718 (5th Cir.1942); 2A *Moore's Federal Practice* ¶ 8.17. The amended complaint contains no such allegations. Employment for a number of years in the same job position does not give one a contractual right to continued employment in that same position absent a special statute. *Pearson v. Youngstown Sheet & Tube Co.,* 332 F.2d 439, 441 (7th Cir.1964), certiorari denied, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (allegation of employment for 28½ years in the same job position held insufficient to support claim of implied contract of permanent employment).

The final allegation plaintiffs make in support of their claimed property right in their coaching positions is that they had a "reasonable expectation of reemployment" and therefore *de facto* tenure when the school board replaced them as coaches. They do not allege, however, that this expectation was based upon anything other than their misreading of the Illinois School Code, their misunderstanding of Illinois contract law, and the fact that they had been rehired in the past. The Supreme Court has held that the Fourteenth Amendment's guarantee of due process does not protect an employee's expectation of continued employment when that expectation is founded upon a mistaken understanding of state law, regardless of how reasonable that understanding is. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 N.E.2d 684.[5] Were it otherwise, state legislatures and administrative agencies and local government bodies would constantly be required to revise the wording of their statutes, regulations, and contracts to take account of situations they did not foresee when they first drafted them. It is less burdensome for an employee to take account of a little uncertainty in state law than it is for a state to take account of every possible way in which employees might misinterpret what it says. The Supreme Court has also rejected the argument that a state teacher with a one-year employment contract has a property right in being rehired just because the state has in the past rehired him and most other teachers it employs on a year-to-year basis. *Board of Regents v. Roth,* 408 U.S. 564, 578 n. 16, 92 S.Ct. 2701, 2710 n. 16, 33 L.Ed.2d 548. Only if the state's past hiring practices constitute a common law of reemployment does the state have any duty to rehire one of its employees just because it has rehired him before. *Perry v. Sinderman,*

---

4. Plaintiffs also allege that on one occasion the superintendent of schools for their school district told each of them that "as long as you want the [coaching] job, it's yours." Plaintiffs may not rely upon that statement to claim that the school board was under any obligation to rehire them. At best, the statement is an expression of good will, not a guarantee of permanent employment, *Titchener v. Avery Coonley School,* 39 Ill.App.2d 871, 875, 350 N.E.2d 502 (2d Dist.1976); plaintiffs do not allege that they surrendered anything of value in exchange for the statement, *id.;* and the superintendent had no power to offer plaintiffs employment as coaches, *Elder v. Board of Education,* 60 Ill. App.2d 56, 68, 208 N.E.2d 423 (1st Dist.1965).

5. A number of federal circuit courts have held that an employee does not have a right of property in his job when his expectation of continued employment is at odds with federal or state law or with published tenure rules. *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981); *Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438 (2d Cir.1980); *Eichman v. Indiana State University Board of Trustees,* 597 F.2d 1104 (7th Cir.1979); *Davis v. Oregon State University,* 591 F.2d 493 (9th Cir.1978); *Mack v. Cape Elizabeth School Board,* 553 F.2d 720 (1st Cir.1977); *Ryan v. Aurora City Board of Education,* 540 F.2d 222 (6th Cir.1976); *Lukac v. Acocks,* 466 F.2d 577 (6th Cir.1972). Accord *Penman v. Board of Trustees,* 94 Ill.App.3d 139, 145–146, 49 Ill.Dec. 775, 418 N.E.2d 795 (5th Dist.1981).

408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570. There is nothing in the amended complaint to suggest the existence in plaintiffs' school district of a common law governing the reemployment of athletic coaches. There is nothing to suggest that the school board follows any set of standards when it considers whether to rehire an athletic coach and that it considers itself bound to apply that same set of standards every time an athletic coach's contract is up for renewal. Cf. *id.* at 600, 92 S.Ct. at 2699 (state university system with published guidelines and policy statement); *Soni v. Board of Trustees,* 513 F.2d 347, 350, 351, certiorari denied, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (teacher held to have *de facto* tenure because he was given same benefits and privileges as *de jure* tenured teachers received). The most one can infer from plaintiffs' complaint is that in the past, the school board had been satisfied with plaintiffs' performances as coaches. That the school board had been satisfied in the past was, of course, no guarantee that it would always remain so.

In sum, the Illinois Tenure Law did not give plaintiffs tenure as coaches, and it does not appear possible from the allegations in the complaint that plaintiffs will be able to prove that the school board ever intended to give them tenure as coaches or that the school board consistently adhered to an express policy of granting tenure to athletic coaches. Thus it is not possible to infer from the complaint that plaintiffs had either *de jure* or *de facto* tenure as coaches and plaintiffs' claim that they were deprived of property when the school board replaced them is therefore groundless.

III. Defendants' Alleged Statements Did Not Deprive Plaintiffs of Their Liberty

Plaintiffs allege in Counts XXII and XXIV of their complaint that when the school board decided not to rehire them as coaches, several members of the school board made public statements about plaintiffs that deprived them of their liberty. These statements were that: a change in coaches would be good for the school's athletic program, plaintiffs had over 50 years'

combined coaching experience and it was time for a change, "Good athletes do not go out for sports because they don't want to play for the present coaches," and "profanity, lack of respect, problems with discipline, fairness" were problems in the school's athletic program.

In *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 the Supreme Court acknowledged that "[t]here might be cases in which a State refused to reemploy a person under such circumstances that interests in liberty would be implicated." If the State made public charges against a former employee "that might seriously damage his standing and associations in his community" or that might "impose[ ] on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities," then the employee would be entitled to an opportunity to clear his name. Ours is not such a case.

It might be somewhat easier for plaintiffs to find new coaching positions at other schools if potential employers did not know that the school board no longer wants plaintiffs as coaches. But the Constitution did not require that the school board act secretly when it replaced plaintiffs so that they might have an easier time finding new employment. *Board of Regents v. Roth,* 408 U.S. 564, 578 n. 16, 92 S.Ct. 2701, 2710 n. 16, 33 L.Ed.2d 548. It required only that members of the school board not make public statements so critical of plaintiffs' coaching abilities that it would be virtually impossible for them to find new employment in similar coaching positions or so critical of their persons that people in their community would no longer want to associate with them. The statements plaintiffs allege are not of these types. See, *e.g., Ventetuolo v. Burke,* 596 F.2d 476 (1st Cir.1979); *Weathers v. West Yuma County School District R–J–1,* 530 F.2d 1335 (10th Cir.1976); *Gray v. Union County Intermediate Education District,* 520 F.2d 803 (9th Cir.1975); *Blair v. Board of Regents of State University and Community College System of Tennessee, et al.,* 496 F.2d 322 (6th Cir.1974); *Russell v. Hodges,* 470 F.2d 212 (2d Cir.1972). Other school boards or private schools would hard-

ly be less reluctant to hire plaintiffs as coaches after hearing these statements than they would be had they only heard that plaintiffs had been replaced. Since popularity in plaintiffs' community surely does not depend entirely upon one's successes on baseball diamonds and football fields, it is inconceivable that plaintiffs have become social outcasts because of these statements. One must dig beneath the statements to find actionable criticism of plaintiffs' coaching abilities, and no amount of digging will produce any criticism of plaintiffs' persons sufficient to meet the *Roth* standards.[6]

Plaintiffs had no Fourteenth Amendment right to a hearing before the school board replaced them because under Illinois law they had neither *de jure* nor *de facto* tenure in their coaching positions. Under federal law, defendants' alleged statements were too trivial to infringe plaintiffs' liberty interests. Therefore we affirm the trial court's dismissal of the amended complaint.

---

**6.** Plaintiffs rely on *Endicott v. Huddleston*, 644 F.2d 1208 (7th Cir.1980); *McKnight v. Southeastern Pennsylvania Transportation Authority*, 583 F.2d 1229 (3d Cir.1978); *Austin v. Board of Education of Georgetown*, 562 F.2d 446 (7th Cir.1977); *Huntley v. Community School Board of Brooklyn, etc.*, 543 F.2d 979 (2d Cir.1976), and *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976). However, in those five cases the state defendants had severely damaged the reputation of the litigants by accusing them of dishonesty, immorality, pressure to drop criminal charges, intoxication and the like. Hence they are inapplicable.